HENRY v. HARRIS et al.

(District Court, S. D. Georgia, W. D., January 12, 1912. Supplemental Opinion, January 15, 1912.)

*(Syllabus by the Court.)*

1. SPECIFIC PERFORMANCE (§ 8*)—RIGHT TO RELIEF—DISCRETION OF COURT.
   A suit in equity, praying specific performance, is addressed to the sound discretion of the court.
   [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 17, 18; Dec. Dig. § 8.*]

2. BANKRUPTCY (§ 391*)—PROCEEDINGS—SCOPE OF INQUIRY.
   Where, pending a suit for specific performance, strongly controverted, involuntary proceedings in bankruptcy are filed against the defendant, he is adjudicated bankrupt, a trustee is elected, and is made a party to the bill, it is the duty of the court to consider the intervening equities of the bankrupt defendant's creditors.
   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 391.*]

3. BANKRUPTCY (§ 155*)—PROCEEDINGS—EQUITIES OF THIRD PERSONS.
   Where it is shown that the plaintiff in a bill for specific performance has promised to pay $36,000 for valuable realty belonging to such bankrupt, and where such plaintiff has given an option to his right to a third party for $1,000, no money has been paid, and it appears that the property itself is worth from $60,000 to $75,000, the plaintiff's apparent equity would be measured by the profit he promised to accept; and, if his right to this had been established, equity would require the court to direct the trustee to pay him such profit, and pay the excess of value in the property to the bankrupt's debts.
   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 155.*]

4. BANKRUPTCY (§ 155*)—PROCEEDINGS—EQUITIES OF THIRD PERSONS.
   The equity of the person to whom such option is promised is speculative, and may not contravene the equity of the creditors.
   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 155.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5.** BANKRUPTCY (§ 247*) — ADMINISTRATION OF ESTATE — INSTRUCTIONS OF COURT.

Where the trustee and his attorney improvidently agree with the attorneys for the third party to part with the principal asset of the bankrupt for a sum not more than half its value, it is the duty of the judge, sitting in bankruptcy and in equity as well, to protect the creditors, and, if need be, by an authoritative publication to apprise them of his opinion, judicially formed, as to their precise rights.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 247.*]

**6.** BANKRUPTCY (§ 247*) — ADMINISTRATION OF ESTATE — INSTRUCTIONS OF COURT—OPINION.

To form such opinion on an ex parte petition to carry out such agreement, presented by trustee's attorney, based upon such inadequate offer from plaintiff's attorney, and to refuse the same after inquiry, is judicial action. The fact that the court is prevented from filing and publishing his opinion and decision by the withdrawal of the offer does not change the character of this action.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 247.*]

**7.** BANKRUPTCY (§ 247*) — ADMINISTRATION OF ESTATE — INSTRUCTIONS OF COURT.

Under the circumstances above stated, where creditors are numerous and live in several states, and the court, by many previous hearings, with all the parties before it, has been fully apprised of all the facts in both proceedings, and where the publication of his opinion has been prevented as above stated, it is not improper for the judge to prepare and direct that an authoritative expression of his views shall be published for the information of creditors, and the publication of such opinion does not indicate personal prejudice or bias against the complainant, who is personally unknown to the judge presiding.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 247.*]

**8.** JUDGES (§ 51*)—DISQUALIFICATION—SUFFICIENCY OF AFFIDAVIT.

It is not sufficient to disqualify a judge, under section 21 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1090), to allege that he has formed an opinion as to the law of the case and the rights of the parties, when it has been judicially formed and published for legitimate purposes. The affidavit must specifically allege personal prejudice and bias on the part of the judge toward the party seeking his disqualification.

[Ed. Note.—For other cases, see Judges, Dec. Dig. § 51.*]

**9.** JUDGES (§ 51*)—DISQUALIFICATION—SUFFICIENCY OF AFFIDAVIT.

An affidavit of the character defined by section 21 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1090) must be strictly construed, and must strictly conform to the statute.

[Ed. Note.—For other cases, see Judges, Dec. Dig. § 51.*]

**10.** DISMISSAL AND NONSUIT (§ 60*)—GROUNDS—WANT OF PROSECUTION.

When, on the final hearing of a bill for specific performance, a defective affidavit is filed to disqualify the judge, and when, after hearing the same and relating evidence, it is held that the judge is not disqualified, and the attorneys representing the complainant refuse to proceed further, declaring that the judge is merely an automaton, and that his decision will be treated by them as a nullity, it is the duty of the court to dismiss the bill for want of prosecution.

[Ed. Note.—For other cases, see Dismissal and Nonsuit, Cent. Dig. §§ 140–152; Dec. Dig. § 60.*]

### Supplemental Opinion.

**11.** JUDGES (§ 40*)—DISQUALIFICATION—STATUTORY PROVISIONS.

Section 21 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1090), providing an amendment to the law disqualifying a judge if a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

party shall file an affidavit charging him with personal prejudice or bias, has no relation to cases pending or causes of action originating before the 1st of January, 1912, when such Code became effective.

[Ed. Note.—For other cases, see Judges, Dec. Dig. § 40.*]

Action by C. S. Henry against E. B. Harris and another. Dismissed for want of prosecution.

M. Felton Hatcher and W. D. McNeil, for complainant.

Akerman & Akerman and A. L. Dasher, Jr., for Cook Clayton, Trustee.

Miller & Jones and C. H. Hall, Jr., for E. B. Harris.

SPEER, District Judge (orally). This controversy arises over the opportunity of getting a valuable corner lot in the business section of Macon, property as valuable, perhaps, as any of the same size in the city. The title to this property is in a gentleman who has been adjudicated a bankrupt, Mr. E. B. Harris. It is claimed by the complainant here that he is entitled to have a decree for the specific performance of an alleged contract made between Mr. Harris and himself, by which the title to that property should be placed in him, adjudged to be his. Pending the bill for specific performance, which has been stoutly contested, it appears from the record before the court that bankruptcy has intervened, and the trustee in bankruptcy has been made a party to the litigation in equity asking for specific performance. Before this, however, the matter had been referred to a master, the master had made his report in favor of the complainant, this had been excepted to, and the exceptions were pending. That being the status of the case, several efforts on the part of the bankrupt to compromise his bankruptcy case with his creditors having been defeated by some of the creditors represented by some of the counsel who appear here now, it became the duty of the court to administer the assets in bankruptcy.

Efforts of compromise of the specific performance suit have been made on at least two occasions. These efforts were made by Mr. Henry, the complainant in the bill for specific performance. In one he offered to buy the stock of goods for $10,000, and pay some thousands more, provided the court would direct the trustee to withdraw his exceptions to the master's report, and decree that the title to this property is in him, Henry. That was declined by the court as inimical to the best interests of all parties concerned. Then the motion which has been read in evidence was presented by Mr. Akerman, in which an offer of $4,000 was made upon the same conditions. This was on the 13th of December.

[1, 2] Now it is the duty of the court in bankruptcy to consider the rights of all persons before it. It is the duty of the court to preserve, if possible, the equities of all these parties. It was entirely familiar with the case, it had been fought out in every possible way, everybody had a full hearing, the judge was precisely advised, so far as he was capable of understanding them, of all the equities in the case, and he saw the situation to be this: It appeared that this property, if sold at all by Mr. Harris, had been sold for little more than

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

half its value. The sale was not completed; bankruptcy intervened. An intervening equity must always be considered by the court upon a proceeding for specific performance, and that proceeding is addressed to the sound discretion of the court. There is no doubt about that being the law. It has been adjudicated in a multitude of cases.

"The granting of the equitable remedy of specific performance is a matter of discretion." Marthinson v. King, 150 Fed. 48, 53, 82 C. C. A. 360, 365.

[3, 4] Very well; the court looked at the attitude of the parties, and inquired what interest has Henry in this matter. It appeared to the court, from the record before it, that Henry had sold his interest in this property to Neel, or somebody else, for $1,000, or rather given the option of purchase to such person for $1,000. This sum had not been paid. His equity to him is then worth $1,000, and no more, if it is worth anything. The right of the third person, who has paid nothing for an option to buy the property promised by Henry, is merely speculative, and cannot successfully contravene the positive equities of the bankrupt's creditors.

Now, what are the intervening and conflicting equities? Here are a multitude of creditors of Harris. Their claims amount to some $76,570.87. Here is a value in that corner lot representing the excess between $36,000, which was the alleged purchase price, and $60,000 or $75,000, which it is worth. Is it not the plain duty of the court, if possible, to make Henry whole, pay him, if need be, $1,000 if he is entitled to it, and subject the balance to the intervening equity of the bankrupt's creditors? This is so plain that it does not seem possible for any one, a way-faring man or anybody else, to err therein. That was the phase which was presented to the court when Mr. Akerman made this motion to call a meeting of creditors, to part with their rights, perhaps, for the sum of $4,000.

[5] The court very well knew all the creditors were in the dark as to their rights. It prepared an opinion which might have enlightened them. Then, upon the application of counsel who desires to secure this property for his clients, the offer was withdrawn. The attorney, W. D. McNeil, according to his own testimony under oath in this hearing, stating to the judge, at the time that he withdrew the offer, that it was done to prevent the publication of the opinion. The judge thought about that. Was there any significance to be attached to it? What did counsel have in mind? Did he desire to deprive the profession and the public of a lucid opinion setting forth the law upon this important topic? Assuredly not; a member of the bar would not be so unkind to the public and the court. What, then, was his motive? The court could perceive no other, except that perhaps there might be some facts in the case which, while these negotiations were pending he did not wish the creditors to be apprised of.

[6, 7] That being true, in the interest of absolute fairness and justice, the court thought it its duty to advise the public in an authoritative way of its views on the subject; to use his language in the statement to the paper:

"That creditors might be advised of the value of the property." "Everything will be judicially done," wrote the judge, "and, if the judge is right,

this valuable property will be sold at public outcry [and he did not declare that he is absolutely right, because he writes that is his opinion 'as he is then advised'; that is, his 'tentative opinion,' and that he said on a judicial proceeding pending before him, said it judicially after inquiry and investigation]. If the judge is right, this valuable property will be sold at public outcry, and the business world can be on hand to do its own bidding, with an even chance to all, and the probability of paying all creditors a hundred cents on the dollar."

Now, what is there improper in that? What is there expressive of partial or unworthy judicial conduct in that? It was an application on which the court had all the facts before it. It saw that in certain quarters there seemed a desire to suppress the facts. For that reason the newspaper statement was given. The first line of that statement, now in evidence, terms it "authoritative." Well, now; what is the law?

"Whenever a party to any action or proceeding, civil or criminal, shall make and file an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against him or in favor of any opposite party to the suit, such judge shall proceed no further therein, but another judge shall be designated in the manner prescribed in the section last preceding, or chosen in the manner prescribed in section twenty-three, to hear such matter. Every such affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists [what bias? Why, of course, a personal bias], and shall be filed not less than ten days before the beginning of the term of the court, or good cause shall be shown for the failure to file it within such time."

If this affidavit had conformed to the law, if the act itself is valid, which may be seriously doubted:

"It shall be his [the judge's] duty, on application by either party, to cause the fact to be entered on the records of the court, and also an order that an authenticated copy thereof shall be forthwith certified to the senior circuit judge for said circuit then present in the circuit, and thereupon such proceedings shall be had as are provided in section fourteen."

[9] But this affidavit before me does not comply in any respect with this statute. Such affidavits must be strictly construed. "The statute must be strictly followed." 23 Cyc. 592; Kelly v. Hocket, 10 Ind. 299; State v. Moore, 121 Mo. 514, 26 S. W. 345, 42 Am. St. Rep. 542.

[8] The affidavit nowhere alleges that the judge has *personal* bias or prejudice. It alleges that the judge has printed his opinion with regard to the law of the case, and that he is not impartial for that reason, and that he is prejudiced "against the rights of the complainant," because he has preconceived ideas of the law. These ideas, I may say, he has obtained after a careful investigation on a judicial proceeding in the process of the case on a motion made by counsel for the trustee, backed up by the counsel who now come here and make this objection to the court. It was on the offer of Mr. McNeil that this motion was made by Mr. Akerman, and upon that the judge made his judicial deliverance. That was not published, it is true; but the substance of it was published in the paper.

Now, there can be no doubt that I am not in any sense disqualified. I do not know Mr. Henry. I have a tentative view of the law of this

case. It might have been changed by argument. I have not heard any argument, and my opinion stands.

I may say, in conclusion, that the head and front of my offending is that I have differed with these young men upon a question of law, and when I thought I saw that it was intended in a certain quarter to suppress an opinion in which that difference had been expressed, I felt it my duty to give to the public and to the parties intelligible information of what I thought to be the law, that those interested might, if they saw proper, protect themselves. That the creditors were in the dark as to their own rights, that they were in danger of losing more than half the assets, that they were not familiar with those legal principles I have enumerated, whose application may secure their debts, is incontestable; and I sought to unfold in an authoritative way my tentative views, already judicially formed, so that they might see the light as I was then advised. This is all, and for this it has been blazoned through the length and breadth of the land that I am an unfair and partial judge, unworthy to try the cause.

In my long judicial service there have occurred many instances in which as judge I have been obliged to confound the purposes of crime, or fraud, of greed, or avarice. A judge of a United States court, in a large and populous district, who has the courage of his convictions, cannot be said to sail through life "on seas of milk in ships of amber." It is perhaps true that in many mighty cases, in which I have presided, I have been subjected to criticism far more truculent, by critics perhaps more formidable than the young men who have so causelessly and cruelly taken unlawful action tending to impugn my judicial character in this case. Not one, nor all, however, have occasioned me more distress. They are both graduates of the law school to which quite unselfishly I have for 20 years devoted most of the time I have been able to spare from my judicial labors to the education of the country's youth. Toward neither have I indulged an unkind word or thought; both I have attempted to serve, and one has been heretofore the object of deep and most interested solicitude. The plaintiff, Henry, I never knew. The amazed and astounded sense of wrong I have suffered since these abortive affidavits were published can then be understood by every nature capable to appreciate the chastity of judicial honor, which feels a stain like a wound.

But is it not true that this is the reward of most who have conscientiously, fearlessly, and effectively served the day and time in which they lived? Was it not true of David, the son of Jesse, the royal poet and warrior of Israel, whose gallant young heart and deadly sling laid low the giant of Gath, whose military genius extended the dominions of Israel from the Orontes to the Euphrates, whose divine inspiration has left to all tongues and all times the sacred melody of the sublimest poetry the world has ever known? Was not even David in his old age obliged to pray:

"Deliver me from mine enemies, oh, God; defend me from them that rise up against me.

"Deliver me from the workers of iniquity.

"For lo, they lie in wait for my soul; the mighty are gathered against me; not for my transgression nor for my sin.

"They run and prepare themselves without my fault; behold they belch out with their mouth:

"But thou, oh Lord, shalt laugh at them; Thou shalt have them in derision."

I might say more, but did not David also say:

"I will keep my mouth with a bridle while the wicked is before me."

[10] Mr. Akerman, counsel for the complainant, refusing to proceed with the case on trial, you may take an order dismissing it for want of prosecution.

## Supplemental Opinion.

The gravity of this case has impelled the court to give it further consideration. While a final decree and order has been entered, the court during the term has control of its own records and orders. Understanding that, if any injustice had been done the complainant, it was competent for the court to modify the decree, of its own motion, the record has again been scrutinized and the law again examined.

[11] The result has been the conclusion that section 21 of the Judicial Code has no reference to any case pending at the time it took effect. This was January 1, 1912. Section 299 of the new Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1169) provides:

"The repeal of existing laws, or the amendments thereof, embraced in this act, shall not affect any act done, or any right accruing or accrued, or any suit or proceeding * * * pending at the time of the taking effect of this act, but all such suits and proceedings, and suits and proceedings for causes arising or acts done prior to such date, may be commenced and prosecuted within the same time, and with the same effect, as if said repeal or amendments had not been made."

This provision, then, not only preserves to any litigant in a cause pending on the 1st of January, 1912, the right to proceed as if the act had not been passed, but even authorizes a new suit or action upon a cause of action originating before that date, and makes the act also inapplicable to such new suit or action. It was plainly the object of Congress to avoid any retroactive operation of this new law. It was the purpose of Congress to make it applicable to future suits and actions arising because of future acts or future rights.

The provision of section 21 of the act which requires that the affidavit seeking to disqualify a judge because of personal bias or prejudice shall be filed not less than 10 days before the beginning of the term of court, or good cause shall be shown for failure to file it within such time, is additionally persuasive that the clause amending the old law and defining a new ground of disqualification should have only a future operation. Any other interpretation would seem reductio ad absurdum, for how can the affidavit provided for by the act be filed 10 days prior to a term which began before the act went into effect?

There is, however, no ambiguity about clause 299. Excluding all language except that which is directly pertinent to the case before the court, the amendments to the existing law it is declared "shall not

affect any act done, or any suit or proceeding, pending at the time of the taking effect of this act." Since the equity cause in this case was filed on October 23, 1909, and the bankruptcy proceeding on March 27, 1911, the suit or proceeding before the court was pending when the act took effect, and the affidavit of alleged disqualification, even had it conformed to the statute, has no place in the files of the court, and is merely a brutum fulmen.

For this additional and palpable reason, the action of the complainant and his counsel has no justification in law, as it had none in fact.