## BENEDICT v. SEIBERLING et al.

(District Court, N. D. Ohio, W. D. December 23, 1926.)

No. 702.

**I. Judges ⬅⬆56—Facts held to warrant extension by recused judge of temporary restraining order, issued without notice (Clayton Act [38 Stat. 730]).**

Filing of an affidavit of bias and prejudice against the trial judge after issuance of a temporary restraining order without notice, but too late to permit the substitution of another judge within the 10 days when the restraining order would expire, *held* to warrant extension by the sitting judge of the order for an additional 10 days under Clayton Act (38 Stat. 730).

**2. Judges ⬅⬆51(4)—Judge must pass on sufficiency of affidavit of his bias or prejudice.**

A judge against whom an affidavit of bias or prejudice is filed must pass on its sufficiency, and, if found insufficient, may strike it from the files; his action being reviewable on error.

**3. Judges ⬅⬆51(3)—Affidavit of bias or prejudice must charge that it is personal.**

An affidavit of bias or prejudice filed against a judge is efficacious only when it charges that he has a personal prejudice against affiant or bias in favor of an opposite party to the suit.

**4. Judges ⬅⬆51(4)—In determining sufficiency of affidavit of bias or prejudice, judge must accept allegations of fact.**

A judge against whom an affidavit of bias or prejudice is filed, in passing on the same, must accept as true every allegation of fact made as a predicate for affiant's belief, and is entitled to the benefit, as a negation, of any omitted averment which, if made, might have strengthened the affidavit.

**5. Judges ⬅⬆49(1)—Adverse judicial action not ground for disqualification.**

Adverse judicial action, cannot be made the basis for disqualification of a judge, unless facts and reasons are alleged which show that the judge was biased or prejudiced.

**6. Judges ⬅⬆51(4)—Affidavit of bias or prejudice must be strictly construed.**

An affidavit of bias or prejudice filed against a judge must be strictly construed and the terms of the statute strictly followed.

**7. Judges ⬅⬆51(3)—Affidavit of bias and prejudice held insufficient in fact statement.**

An affidavit of bias and prejudice, made by a defendant, *held* insufficient in fact statement which alleged that the judge was biased in favor of persons named, who were not parties to the suit, but were alleged to be interested therein and to have instigated it, but did not allege that the judge knew of such interest, or was even acquainted with such persons, or had any personal knowledge of the controversy involved in the suit, that did not set out any words or conduct or action of the judge showing bias or prejudice, or allege that he had any acquaintance with complainant or affiant, or that the bill did not allege a good cause of action, and

which alleged bias in favor of only one party to the suit, which was a stakeholder without interest.

**8. Judges ⬅⬆51(3)—"Counsel," required to certify to the good faith of an affidavit of bias or prejudice, means a person capable of giving testimony and not a firm (Judicial Code, § 21 [Comp. St. § 988]).**

In the provision of Judicial Code, § 21 (Comp. St. § 988), that an affidavit of bias or prejudice against a judge shall not be filed "unless accompanied by a certificate of counsel of record that such affidavit and application are made in good faith," the word "counsel" denotes a person, capable of testifying, and a certificate bearing only the firm signatures of partnerships of attorneys is insufficient.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Counsel.]

**9. Judges ⬅⬆51(4)—Duty of judge, against whom insufficient showing for recusation has been made, is to remain in case.**

A judge, against whom an insufficient showing for recusation has been made, owes it to his oath of office and to the litigant who has invoked the jurisdiction of the court over which he regularly presides not to withdraw from the case, however much his personal feelings may incline him to do so.

See, also, 17 F.(2d) 841.

Tracy, Chapman & Welles, of Toledo, Ohio (Thomas H. Tracy, George D. Welles, and Newton D. Tracy, all of Toledo, Ohio, of counsel), for plaintiff.

Squire, Sanders & Dempsey, Thompson, Hine & Flory, and Griswold, Green, Palmer & Hadden, all of Cleveland, Ohio, Mather, Nesbitt & Willkie, of Akron, Ohio, and Fraser, Hiett, Wall & Effler, of Toledo, Ohio, for defendant Robinson.

### Affidavit of Disqualification.

KILLITS, District Judge. The complaint in this case was filed December 10, 1926. It was twice verified, on information and belief by the plaintiff, and positively by another individual, who alleged his full knowledge of all of the facts and circumstances set out. With it was also filed an affidavit supporting the complaint in setting forth grounds for a temporary restraining order which was granted without notice.

December 20, at 10 a. m., was designated for the hearing of a motion for a temporary injunction. Timely notice came to every defendant. On the morning of December 18, a motion to quash service was filed by defend-

ants F. A. Seiberling, Francis Seiberling, Manton, and Robinson; and later, at 10:47 a. m. of that day, an affidavit and application in attempted disqualification of the sitting judge was filed. This was but a little over an hour before, according to Saturday custom, the clerk's office and judge's chambers closed.

Some time during the morning, but before the filing of the affidavit, a complete copy thereof was furnished by one of the counsel of record to a local newspaper, and the substance whereof, in an extended article, was in such paper published a short time after the filing hour.

Upon authority later cited herein, it became our immediate duty to pass upon the sufficiency of the attack upon our competency to sit in the case—a duty so pressing that we were precluded, for the time being, to take up any other matter in the case, however pressing, if diligence had been followed in the filing of the affidavit.

In Shea v. United States (C. C. A.) 251 F. 433, a decision of our own Circuit Court of Appeals, certiorari denied, 248 U. S. 581, 39 S. Ct. 132, 63 L. Ed. 431, the facts showed that the case was set for trial on Monday, January 8, 1917; and that on Saturday, January 6, an affidavit attacking the sitting judge's qualifications had been filed, upon an allegation of facts which had been known to affiant for a substantial time before the filing. It was held that, while the circumstances exonerated affiant from complying with the statutory provision that the affidavit should be filed not less than 10 days before the beginning of the term, nevertheless its filing was too long delayed; and that the court was justified in striking it from the files. We do not think that this authority is pertinent to much of this case. We must regard the filing as timely as to every action by the attacked judge herein, except as to one matter which we have the assurance, in statements made to us privately by counsel for recusing affiant, is unimportant, and as to which limited action by the court will work no hardship to affiant, and concerning which a brief statement is necessary.

[1] By the terms of the Clayton Act (38 Stat. 730), a temporary restraining order is effective for but ten days; a discretion to extend, however, lies with the court. With the afternoon of Monday, December 20, the order would expire in effectiveness, unless renewed for satisfactory reasons. The recusing affidavit is not only very long, but, to properly consider it, required an intensive study of a long bill and its exhibits. The court found itself unable to give sufficient consideration to it prior to 10 a. m. of Monday, December 20. To have allowed its filing to halt all activities by the attacked judge in the case would have resulted in an injustice to the complainant, in that the restraints of the temporary order upon the defendants would be removed before the merits of the motion for temporary injunction could be heard. It was not reasonably practicable to obtain another judge between 11 a. m. of Saturday and 10 a. m. of Monday to consider extending the life of the restraining order. Therefore, assuming, as already decided, that the complainant was entitled to the benefits of a temporary order until such hearing, the affidavit would, in some measure accomplish its purpose, even if it should ultimately be determined to have been insufficient in law, unless the judge sought to be recused acted in this particular instance.

Paragraph 12 of the affidavit sets up in some detail a purely business transaction, had a substantial time before the commencement of this action, between the sitting judge and an individual who is not a party to the case, but who is named in the affidavit as one who assisted in procuring what the affiant insists in the affidavit was an attempt to produce an alleged collusive jurisdiction in this court. Other allegations in the affidavit attempt to set up a nexus between this business transaction and the commencement of this suit, and it is urged as one of the facts justifying belief in the judge's personal bias.

In this paragraph 12 it is stated that the attacked judge, on the afternoon of December 15, narrated to counsel for affiant the facts of this business transaction. However, the fact is known to counsel and the attacked judge alike that the existence of substantially all of the substantial facts concerning this transaction were known to counsel for the affiant prior to the interview with the judge on the afternoon of December 15; and no other allegation of alleged fact in the affidavit carries an inference that any of the basic reasons for assuming prejudice or bias on the part of the attacked judge were not known to affiant until so soon before the date of the filing of the affidavit as to reasonably preclude a much earlier preparation and presentation thereof. The reasonable inferences, as well as admissions to the court by affiant's counsel, are quite to the contrary. We therefore applied to the one question of the right of the attacked judge to preserve the status of the parties as it existed when the affidavit was filed, through an extension of the operation of the temporary restraining order

for ten days more, a conclusion, under the authority of Shea v. United States, supra, that, as to this limited extent only, the affidavit was inoperative for want of a timely filing. It is not asserted in the affidavit that a lawful discretion was not exercised by us in allowing the temporary restraining order.

To appraise the qualifications of the affidavit, it is necessary as well as proper to briefly refer to the character of the bill. The plaintiff, a resident and citizen of the state of New York, asserts her ownership of stock in the defendant the Goodyear Tire & Rubber Company, hereafter called the Goodyear Company. This stock has been deposited by her and is now controlled by a voting trust in accordance with a voting trust agreement entered into in 1921; that at about that time a reorganization of the affairs of the Goodyear Company was entered into to effectuate a plan of financing, under which reorganization plan to this time the company has been operating. Generally speaking, for the purposes of this memorandum, it is not necessary to elaborately set forth the scope either of the reorganization or plan. These set up three classes of stock: Prior preference, preferred, and common. For financing purposes, under the plan, a majority of the holders·of each of these classifications deposited their respective holdings with a selected depositary, by it to be voted according to the voting power of the various classes of stock through and by the direction of appropriate voting trustees. In addition, a fourth issue of stock was put out in limited amount, called management stock, of nominal par value, the holders of which were to have the authority to elect a majority of the board of directors of the Goodyear Company while the plan continued in operation.

The defendants, in addition to the Goodyear Company, and the Union Trust Company of Cleveland, which was selected as the depositary, to which, so far as the bill makes any revelation whatever, no interest in any of these controversies attaches, are F. A. Seiberling, Russell L. Robinson, E. E. Mack, C. R. Erwin (George M. Jones, proxy), and Henry B. Manton, who are trustees under the common·stock voting trust, E. G. Wilmer, A. H. Scoville, W. A. Phillips, trustees under the prior preference voting trust, J. W. McMahon, Arthur A. Fowler, George P. Miller, and Robert C. Schaffer, trustees under the preferred stock voting trust, and Francis Seiberling, a director of the Goodyear Company, charged with the combining with F. A. Seiberling, Robinson, and Manton, two of whom are also directors of the company, in alleged efforts to wreck a proposed reorganization and new refinancing plan, and to otherwise prefer their own interests at the expense of their several trusts. It should be noted that the holders of the management stock are not made parties to the case.

Residences of defendants are alleged as follows: Jones, proxy for Erwin, common stock voting trustee, and McMahon, preferred stock voting trustee, are residents of the Western division, wherein also the Goodyear Company does business, of our district; two other defendants reside in Illinois, two in New Jersey, and one each in Michigan and Wisconsin. The Union Trust Company, the principal place of business of the Goodyear Company, and the several residences of the defendants F. A. Seiberling, Francis Seiberling, Robinson, Mack, Scoville, and Manton, are in the Eastern division of this district.

It is set out that in October of this year the directors of the company, by a vote of 8 to 5, recommended a reorganization of the company and a readjustment of its financing problems to effect a reduction of sinking fund requirements, and, in some measure, interest charges, and to bring about, as a necessary incident, the abolishment of the management stock; that the new plan has had the approval of the prior preference and preferred stock voting trustees and stockholders, but that it has been rejected by the common stock voting trustees by a vote of 3 to 2, the defendants F. A. Seiberling, Robinson, and Manton constituting the majority, and that the opposition of the defendants just named is inspired by their selfish desires and ambitions, in disregard of their obligations as trustees, and that, but for their activities and opposition, and if the common stockholders were themselves permitted to vote their stock, more than three-fifths of the common stock would favor the new plans.

Among other relief asked for, injunctive relief is requested against the defendants F. A. Seiberling, Francis Seiberling, Robinson, and Manton, to restrain their alleged wrongful actions attempted to be described by many averments of the bill, and from continuing to act as voting trustees of the common stock, on the theory that they have severally disqualified themselves, and to restrain the voting trustees of the two other classifications from co-operating with the common stock voting trustees under the plans of 1921, to the end that the company may be reorganized as proposed, and its financial affairs may be readjusted, as recommended by a majority of the board of directors, with an opportunity

17 F.(2d)—53

to stockholders to vote individually their desires in the premises.

While this is but a sketchy statement of the character of the bill which comprises 52 printed pages, it is sufficient.

The affidavit attempting recusation is made by defendant Robinson, who, upon information and belief, alleges that the judge of this court "has a personal bias and prejudice against him and in favor of the plaintiff, and in favor of the defendants E. E. Mack, J. W. McMahon, Geo. P. Miller, E. G. Wilmer, Robert C. Schaffer, A. H. Scoville, W. A. Phillips, George M. Jones, and the Union Trust Company, all of whom are adverse in interest and opposite parties in this action to affiant," and that the facts and reasons for affiant's belief that such personal bias and prejudice exist are as further stated.

It continues with fifteen numbered paragraphs, setting forth these alleged reasons and facts. For the sake of clarity and brevity, we summarize these paragraphs, with strict attention that the full substance or flavor of each thereof be preserved.

(1) That John Sherwin of Cleveland, and Clarence Dillon of New York, through their ownership as joint tenants with one Owen D. Young of 10,000 shares of the management stock of the Goodyear Company have been in complete control of the company, and, in accordance with the reorganization of the company at the time of the financing in 1921, have annually elected eight of the fifteen members of the board of directors of the Goodyear Company, and that, in violation of the terms and provisions of the managing stock agreement, and of their fiduciary relation to the Goodyear Company, Sherwin and Dillon have and still are exercising their powers contrary to the interest of the company and its stockholders, and to the great damage of the latter, and to the great profit of Dillon and of certain firms, partnerships, and corporations in which Dillon and Sherwin are interested.

(2) That from May, 1921, Sherwin and Dillon, in addition to controlling the majority board of directors of the company, have controlled the vote of the prior preference stock, and of the preferred stock of the company, through their alleged domination of the several voting trusts of these respective classes of stock, and that the only effective opposition to the alleged machinations of Dillon and Sherwin, in their own selfish interests, and for the profit of themselves and associates, has come from F. A. Seiberling, Robinson, and Manton as majority trustees of the common stock.

(3) That Dillon and Sherwin are now proposing a new financing of the company, the securities resulting therefrom, it is averred, it is their intention shall be bought by a joint-stock association under the laws of New York, of which Dillon is in control, and which Sherwin and Dillon, as affiant is informed, believes, and avers, intend shall be resold at a large profit to them and their associates.

(4) That the defendants F. A. Seiberling, Manton, and Robinson, constituting a majority of the voting trustees of the common stock, have refused to consent to the refinancing, and that the same cannot proceed unless Sherwin and Dillon succeed either in coercing these defendants, or by destroying the common stock voting trust.

(5) That there is now pending in the state court of Summit county an action brought by certain stockholders of the company, to which Sherwin and Dillon and their associates are parties defendant, for the purpose of removing Sherwin and Dillon as trustees of the management stock, and to require from them an accounting for all profits alleged to have been illegally made by them and their associates out of the alleged maladministration of their trust, and that it is the belief of Sherwin and Dillon that the stockholders' suit was instigated by affiant and F. A. Seiberling and Manton, and that this action has been begun by plaintiff, not in good faith, but at the instigation of Sherwin and Dillon in attempting the retaliation for said stockholders' suit.

(6) That the plaintiff is a sister of a vice president of the defendant Union Trust Company, a banking corporation, of which Sherwin is chairman of the board of directors, and one Joseph R. Nutt president, and that Dillon, Sherwin, and Nutt have procured this action to be brought by plaintiff for the purpose of terminating the common stock voting trust, to the end that Sherwin and Dillon might proceed with their plan of issuing new securities.

(7) That Davidson and Horner were, until recently, trustees under the prior preference stock voting trust, Davidson being a president of a bank in the city of New York of which Dillon is trustee, and which Dillon dominates, and that Horner is a partner in Dillon's firm in New York, subordinate to said Dillon.

(8) That, "in an effort to establish diversity of citizenship in this case, and for the purpose of having this case heard by Judge Killits, the said Sherwin and Dillon caused and procured said Davidson and Horner to resign as trustees of said prior preference voting trust." Affiant does not know the date

of these resignations, but avers upon belief that they occurred shortly prior to the day of the filing of the bill in this case.

(9 and 10) That, in an effort to establish venue in our court, and for the purpose of having the case heard by us, Sherwin and Dillon caused the remaining prior preference voting trustees to elect to one of the vacancies the defendant J. W. McMahon, who lives in the city of Toledo, and also, for the same purpose, caused the defendant Erwin, one of the common stock voting trustees, to issue his proxy to George M. Jones of the city of Toledo.

(11) That Sherwin and Dillon and Nutt caused this action to be brought in our court in the belief that we were biased and prejudiced in their favor, and in favor of the plaintiff, "whom they caused and procured to bring said action, and in the expectation and belief that Judge Killits would issue a temporary restraining order without notice to this affiant or to the defendants, as prayed for in said bill of complaint, which expectation was fully justified by the fact that the record of the clerk of this court shows that the restraining order was filed with said clerk at the precise time that the bill of complaint was filed, and was granted by Judge Killits without notice to affiant or to any of the defendants having interests adverse to plaintiff or to their counsel."

(12) That, at some time substantially prior to the beginning of this action, meeting Nutt socially, we were given an opportunity by him to purchase stock in a merging corporation, and that thereafter we "did participate in said syndicate or pool and paid sufficient of his (our) money" and borrowed the remainder of the money required for said investment, and that we are still paying interest to the Union Trust Company on said loan, and we are still indebted thereon, and that we feel and have expressed gratitude to Nutt for the opportunity so offered us to make such investment; that the facts "were stated by Judge Killits to Harold W. Fraser, of Toledo, Ohio, H. J. Crawford, Walter L. Flory, David E. Green, and Clan Crawford, of the city of Cleveland, Ohio, and N. O. Mather, of the city of Akron, Ohio, all members of the bar of this court, and to B. C. Miller, Esquire, clerk of this court, in the chambers of Judge Killits at Toledo on the afternoon of Wednesday, the 15th day of December, 1926."

(13) That Nutt has at all times since 1921 assisted Sherwin and Dillon in their alleged exploitation of the Goodyear Company, being elected from time to time to its board of directors by the votes of Sherwin and Dillon

serving on the finance committee of said board, and has, as a member of said board and committee, assisted and permitted Sherwin and Dillon in so managing the defendant as to make large profit for Dillon's firm, and for the Union Trust Company and a subsidiary corporation thereof, and that by his infidelity to his obligations as a director of the Goodyear Company, and by his connivance at the infidelity of Sherwin and Dillon to their obligations as management stockholders, Nutt has become liable in large sum to the Goodyear Company, and, with Dillon and Sherwin, is vitally interested in this suit in favor of the plaintiff and against affiant and other defendants interested with this affiant.

(14) That we have been requested not to hear or determine this case or any part thereof, but have refused to withdraw therefrom.

The fifteenth and last paragraph explains the impossibility of filing this affidavit not less than ten days prior to the beginning of this term of court.

An exhibit is attached to the affidavit purporting to be a copy of the petition in the action in the Summit county court. This shows that Joseph R. Nutt is not a party thereto.

Action to recuse a judge is frequently treated in the books. Except as to general principles, decisions are important when upon the exact statutory provisions applicable in the instant case. Although very familiar, the material part of the federal act of 1911 (section 21, Judicial Code [Comp. St. § 988]) may well be set out here.

"Whenever a party to any action or proceeding, civil or criminal, shall make and file an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against him or in favor of any opposite party to the suit, such judge shall proceed no further therein, but another judge shall be designated in the manner prescribed in the section last preceding, or chosen in the manner prescribed in section twenty-three, to hear such matter. Every such affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists. * * * No party shall be entitled in any case to file more than one such affidavit; and no such affidavit shall be filed unless accompanied by a certificate of counsel of record that such affidavit and application are made in good faith. The same proceedings shall be had when the presiding judge shall file with the clerk of the court a certificate that he deems himself unable for any reason to preside with absolute impartiality in the pending suit or action."

The adjudications upon this act, and use-

ful here, generally in order of utterance, are Henry v. Harris (D. C.) 191 F. 868; Ex parte N. K. Fairbank (D. C.) 194 F. 978; Henry v. Speer (C. C. A.) 201 F. 869; vide 191 F. 868; Ex parte American Steel Barrel Co., 230 U. S. 35, 33 S. Ct. 1007, 57 L. Ed. 1379; U. S. v. Fricke (D. C.) 261 F. 541; Keown v. Hughes (C. C. A.) 265 F. 572; Berger v. U. S., 255 U. S. 22, 41 S. Ct. 230, 65 L. Ed. 481; Anchor Grain Co. v. Smith (C. C. A.) 297 F. 204; Saunders v. Piggly-Wiggly Corp. (D. C.) 1 F.(2d) 582; De Ran v. Killits (C. C. A. 6) 8 F.(2d) 840; Nations v. U. S. (C. C. A.) 14 F.(2d) 507.

These decisions establish certain principles as criteria to be applied to the appraisal of an affidavit and application to disqualify a judge, following:

[2] (1) Attacked judge may and should pass upon the sufficiency of the affidavit and application, and, if he finds them insufficient, he may strike them from file and proceed with the case. This action in this behalf becomes reviewable on error.

[3] (2) The affidavit is efficacious only when it charges that the judge has a *personal* bias or prejudice either against affiant or in favor of any opposite party to the suit, and it must state the facts and reasons for the belief that such personal bias or prejudice exists.

(3) Only a real party to the case may make such affidavit and application, and the facts alleged must show justification for affiant's belief that such *personal* bias exists, if not against affiant party, then in favor of an opposite party.

(4) Such affidavit may be made by the party upon information and belief; and that a certificate of good faith made by counsel of record is necessary that an affidavit so made may be acceptable.

[4] (5) The judge, in considering the effectiveness of the affidavit to recuse him, must take as true every allegation of fact set out therein as predicates for affiant's belief, that a personal bias or prejudice exists either against affiant party or an opposite party, no matter whether the judge may have actual knowledge that any or all allegations are, in fact, untrue.

(6) The judge may use his judicial knowledge, where pertinent, to determine the sufficiency of the affidavit, subject to the limitations of 5, foregoing.

[5] (7) Adverse judicial action cannot be made the basis of disqualification unless facts and reasons are alleged which show that the same was biased and prejudiced, either against the affiant party or in favor of an opposite party.

(8) The facts as stated, as relied upon to show personal bias or prejudice, must be sufficient to fairly convince a sane and reasonable mind that such attitude on the part of the attacked judge exists.

[6] (9) The affidavit must be strictly construed, and the terms of the statute strictly followed.

[7] As we have already noted, no one of the three, Nutt, Sherwin, or Dillon, are parties to this case, nor are the trustees of the management stock, Sherwin, Dillon, and Young, parties, and that the Union Trust Company is shown by the bill of complaint to be merely a depositary and stakeholder, having no interest in the outcome of the litigation, one way or the other, and that the affidavit itself asserts no interest in the trust company in the outcome of the litigation.

The affidavit does not deny that the plaintiff is, and for a long time has been, an actual bona fide holder of trust certificates representing common stock deposited under the trust.

It does not deny that the bill sets up a good cause of action against affiant in favor of plaintiff.

It does not assert the correctness of the belief, alleged by affiant to be entertained by Sherwin and Dillon, that Seiberling, Manton, and Robinson are responsible for the proceedings in Akron in the Akron court, designed to remove Sherwin and Dillon from their control of the company.

It does not charge us with any knowledge or information of any kind that Nutt had the slightest interest, direct or indirect, in this suit at the time the temporary restraining order was granted by us.

It does not assert that we had any reason to believe that, as the result of this litigation or any decision which we might make in it, the interests of Nutt or of Sherwin or of Dillon would be affected in any way.

It does not assert that the investment which we made a year ago, at the suggestion of Mr. Nutt, had been or yet promises to be profitable.

It does not attempt to set out any words or conduct on our part showing any bias or prejudice against the affiant, or in favor of plaintiff, or of Sherwin, or Dillon, or Nutt, except that we were grateful to the latter for an opportunity to make the investment in question.

It does not assert that any acquaintanceship exists between the affiant and us, or any dealings of any kind between affiant and us, or any dealings by either in any matter in which the other had the slightest interest.

It does not allege any acquaintanceship on our part with Sherwin or Dillon, or with any person defendant named in the bill, or any contact or association with Nutt, except in the one matter of the investment.

It does not assert that we knew or even heard of the existence of plaintiff before this action.

It does not hint that the loan on which we are paying interest is upon any but the usual and customary commercial terms, or that respecting it we are enjoying any favor or special accommodation afforded by the Union Trust Company or Nutt.

It does not assert that either Sherwin or Dillon had any part in making us such loan, or even knew that it existed.

It does not assert that either Sherwin or Dillon knew that we had ever had any business or social contact with Nutt or that we had a loan with or through the Union Trust Company.

It does not assert that we had any knowledge of the alleged dealings of Sherwin or Dillon or Nutt with the Goodyear Company, or that any one of these parties had anything whatever to do with the bringing of this case.

It does not assert that we had the slightest knowledge of any of the transactions, controversies, interests, or activities of any of the parties in connection with the Goodyear Company's affairs.

It does not show any relationship, acquaintanceship, or dealings of any kind between us and the plaintiff, or with any of the defendants, except the Union Trust Company; and then only in the instance stated.

Even if it could predicate bias on the court's action in issuing the temporary restraining order, which could not be done (Ex parte American Steel Barrel Company, supra), the affidavit does not pretend to assert that that action was not justified by the showing made in the positively verified complaint, and the additional affidavit in point.

It does not say that we had any reason to think that Sherwin, Dillon, and Nutt, or any of them, expected or believed it to be to their advantage to have this case heard before us, or expected that we would be biased in their interest.

These wide open spaces or omissions from the affidavit statement of alleged facts, permit, under the necessary rule of strict construction, the inference that none of such connectional and informative conditions in fact existed. The omissions may be treated and should be treated as negations. The recused judge, who is helpless to deny allegations which may be readily shown to be untrue, or in the performance of our present duty to even consider our own actual and personal knowledge in the premises, is on principle entitled to the benefit as negations of any omitted averment which, if made, might have strengthened the affidavit.

Casting the record before us, therefore, into the compressed and syllogistic form useful for syllabus purposes, the factual situation may be expressed thus:

Plaintiff B. has a cause of action set up in her bill against affiant R. and other defendants; she brought this action at the instigation of S. and D. who are not parties thereto; in procuring her to commence this suit S. and D. were animated by revenge against the defendants F. A. S., F., R., and M., to whom they (S. and D.) ascribed the instigation of an action against them in a state court; S. and D. also planned this action and procured it to be brought in the hope that the defendants F. A. S., R., and M. might be eliminated as obstacles to the ambitions and plans of S. and D. to corruptly exploit the G. Company; N. is a director of the company, made so through the power of S. and D.; N. and S. are high executives of the defendant trust company; the trust company has nothing but a stakeholding interest in this suit; S. and D. are not acquainted with Judge K., nor has either of them ever had any dealings with Judge K.; S. and D. manipulated the places on certain voting trusts to work an apparent jurisdiction of this suit, with the expectation, unknown to Judge K., that Judge K. would favor them; Judge K., unconscious of that expectation, realized it by the granting of a temporary restraining order against all defendants upon a showing on the record which made reasonable the exercise of that judicial discretion; N. is particeps criminis with S. and D. in hitherto exploiting the defendant G. Company, although not a party to the suit against S. and D. in the state court; N. assisted S. and D. to procure this suit in this court, but that was not known to Judge K.; a substantial time before this case was brought, Judge K. was permitted by N. to make an investment, to do which Judge K. used some money in hand and the proceeds of a loan for the balance, upon which loan Judge K. is still paying interest to the trust company; this loan is upon ordinary commercial terms; Judge K. feels and has expressed gratitude to N. for this investment opportunity; neither affiant nor plaintiff is known personally to Judge K.; Judge K. had no knowledge of the

facts herein set out save the issuing of the restraining order and concerning his said investment.

Affiant offers these facts as proof and reasons for his belief that Judge K. in this case entertains a personal bias and prejudice against him and in favor of the plaintiff.

In Keown v. Hughes, supra, Judge Anderson, speaking for the First Circuit Court of Appeals (265 F. 577) says:

"The provision in the statute to the effect that 'such affidavit shall state facts and reasons for the belief that such bias or prejudice exists' is meaningless, unless construed to require the plaintiff, under oath, to at least assert facts from which a sane and reasonable mind may fairly infer bias or prejudice."

Further comment or discussion is surely unnecessary. This affidavit is quite insufficient in fact statement to accomplish its attempted office. It is but a masterpiece exhibition of want of logic and the use of post hoc ergo propter hoc argument. We cannot conceive how it was seriously advanced to support an application for our disqualification; unless on the theory of the absence of logical reasoning which marks mob psychology.

[8] In addition to the defects in the body of the affidavit, it is quite clear that it is not entitled to a place on the files for want of the required certificate. The statute says:

"No such affidavit shall be filed unless accompanied by a certificate of counsel of record that such affidavit and application are made in good faith."

The attempted certificate is as follows:

"The undersigned, counsel of record on affiant's motion to quash service heretofore filed, still objecting to the jurisdiction of the court over affiant and appearing only for the purpose of making this certificate and for no other purpose, certify that the foregoing affidavit and application are made in good faith.

"Squire, Sanders & Dempsey,
"Thompson, Hine & Flory,
"Griswold, Green, Palmer & Hadden,
"Mather, Nesbitt & Willkie,
"Fraser, Hiett, Wall & Effler,
"Attorneys for Russell L. Robinson."

It is noteworthy that a proper certificate is a very vital element of the recusing effort. Our judgment is that only an individual of the necessary qualifications is competent to avouch the good faith attendant upon the filing of a recusing affidavit. The act of certifying to a state of facts is inherently that of a natural person; it is a form of giving testimony—the offering of a living, natural intelligence. We are forced to hold that the word "counsel" used in the statute denotes a human being, having individual intelligence, conscience, and power of discrimination necessary to witness to a fact into whose constituency these attributes must enter. An artificial entity, one a creature of law or custom, as a partnership or corporation, has, as such, none of these attributes. It is not capable, as such, of giving testimony—i. e., of certifying to the existence of any fact—much less to such as a state of good faith.

For instance, the partnership of Squire, Sanders & Dempsey, as such, could not make an affidavit; it could not be sworn. A member or a representative, duly authorized, could be sworn in its behalf; but faith in an affidavit thus executed would be derived only from the living personality who took upon his conscience the oath.

This view seems to have been that of the Supreme Court in the Berger Case (255 U. S. 22, 41 S. Ct. 230, 65 L. Ed. 481), where connivance by his counsel with affiant in a false affidavit is spoken of as a ground of disbarment. In Nations v. United States (C. C. A.) 14 F.(2d) 507, 509, it is said: "Facing a false certificate of counsel stands the penalty of disbarment." It is readily conceivable that connivance between client and certifying counsel may, under some circumstances, constitute the crime of conspiracy under section 37 of the Criminal Code (Comp. St. § 10201). Any partner may use the firm name in the usual course of business; but it would be extravagant to say that a law partnership might be disbarred, as such, or that it might be the subject of indictment because one member, otherwise duly authorized, corruptly used the firm's name in his individual meretricious association with a client.

The absurdity of accepting a partnership signature as satisfactory to a certificate of this character is well exemplified in the instant case, when the first signature to the certificate is considered: "Squire, Sanders & Dempsey." What and how is composed this firm of lawyers is a matter of judicial knowledge in the courts of this district. The use of this firm's name by one of the partners is accepted in our court, for we know who the partners are, authorized as individuals to put its name, when proper, upon our records. This partnership name is necessarily, therefore, known to the judges of this court to be artificial—it does not denote the partnership constituents, because the firm is composed of fifteen individuals associated in practice of the profession of law. The firm name is meaningless except as a purely professional cognomen. With all due respect, which we

gladly give to this firm, it may be fairly said that its name is a mere figure of speech.

In a lesser degree, the same consideration applies to the remaining four partnership signatures, making up the full attempted attestation of good faith; for it is also a matter of judicial cognizance in this district that, behind these firm names, are twenty individual partners, each of whom is authorized to properly use the name of his firm. The same principle and reason which underlie rule 24 of the Equity Rules is applicable here. That rule reads:

"Every bill or other pleading shall be signed individually by one or more solicitors of record, and such signatures shall be considered as a certificate by each solicitor that he has read the pleading so signed by him; that upon the instructions laid before him regarding the case there is good ground for the same; that no scandalous matter is inserted in the pleading; and that it is not interposed for delay."

At the risk of repetition, we say that such a certificate as this should be and only may be made by an individual or individuals, that, in the not impossible, but generally improbable, even that the certificate is false, responsibility for the imposition may be exhibited in the document itself, and its ascertainment not delayed by a dubious and embarrassing investigation.

It may be said that this objection is technical. But, if so, it is one of those technicalities, the observance of which is, by statute, vital if the affidavit is to have any consideration whatever, and is demanded by a controlling principle. The fairness and honor of a judge whose first duty is to be impartial, should not be challenged without the open assumption of full responsibility and accountability by counsel to whom the making and framing of the charge may well be attributed; for it is entirely probable that the affidavit, certainly in framing, if not in substance, is the work of counsel who instructs and directs affiant.

When the bill proposing the act was in the Senate, objection was made that, as drawn, it made possible vicious and irresponsible attacks upon a judge. To safeguard against such a possibility, and to close the door to abuse, amendment was had providing for certificate of counsel attesting good faith. Equity rule 34, in substantially the same form, has been part of the equity practice for eighteen years, and it is presumable that Congress used the word "counsel" with the same meaning given to it in the rule.

Important as this technicality is, we would not, in the instant case, give it any office, if there were in fact here an affidavit which conformed to the statutory requirements, in that it set up alleged facts supporting affiant's assertion that we entertained a personal bias in this case sufficient to appeal to the stabilized conscience of a judge attempted to be recused, and indicating to any reasonable degree of persuasiveness that such an attitude of feeling existed with him.

Notwithstanding our very clear judgment that the affidavit is quite insufficient, and clearly so, to accomplish its purpose, there remains the embarrassing question whether it were not advisable, as an entirely personal matter, for the sitting judge to now voluntarily retire because of the embarrassment created by this futile attack, in view of the circumstances connected therewith, and of its possible effect among thoughtless people upon the estimation in which the court should be held. Were it not for the very substantial difficulties in matters of time, distance, and voluminousness of the record, a consideration of which would be necessary to a right judgment, we would have been glad indeed to have had the friendly advice of our colleagues.

Circumstances exist of a most annoying character, which were entirely unnecessary, and not reasonably incidental to or even concomitant with the attempted exercise of affiant's right to attempt to recuse us. Particularly, we may allude to the very questionable action of one of the counsel in the case, in giving to one of the local newspapers, for extensive and lurid exploitation, before it could be given judicial scrutiny, a copy of a document, the affidavit herein, whose standing upon our records and effectiveness for any purpose were first to be determined by the subject of its attack. It is also unpleasant to dwell upon the fact that this affidavit contained a paragraph detailing a personal and intrinsically unobjectionable business transaction, had by us long prior to the beginning of the action, with a man not named in the bill, and not known to us to have had any possible connection with this case until the claim was made by affiant's counsel a short time before the filing of the affidavit; and in such paragraph to so set up the transaction as to afford a seeming basis for an inference that it was not theretofore known to counsel for affiant, but was revealed to them for the first time by us as something of an admission of a circumstance which might affect the integrity of our administration of this case. It

is difficult to repress a feeling that the common courtesies and decencies of friendly intercourse between gentlemen were here violated to some extent; for the transaction would have been equally efficacious, if of any degree of consequence, if the draftsman of the affidavit had stated its circumstances as within his long prior knowledge, independent of any admission of ours, which was in fact the case.

It is not pleasant, either, to consider the quasi anonymity already alluded to, by which the burden of avouching the good faith of the filing of the affidavit and application is attempted to be carried through the employment of concealing names of partnerships, some of which convey very inadequate information of the personalities behind them. Whatever courage may be required in the performance of a lawyer's duty to his client in such a circumstance as exists here demands an exhibit of himself with clear designation of his identity, a subject which has already been considered.

[9] Considering, to use the language of Justice McReynolds, in his dissenting opinion in the case of Berger v. United States, supra, that probably we are not "an amorphous dummy unspotted by human emotions," who, therefore, in the opinion of the Justice, would not be "a becoming receptacle for judicial power," we confess that these matters have produced a very disturbing impression. Other judges have been placed in similar embarrassments, because of which they also have felt a personal desire to be relieved of the burdens which continuance in the case involved, and have considered their respective duties in adequate language.

In Ex parte N. K. Fairbank Company, supra, 194 F. 996, the late Judge Jones, of the Middle district of Alabama, said in words which we appropriate:

"It has been the law for centuries that a judge 'ought not to withdraw upon a recusation unless the cause is true in fact and sufficient in law, because the office of judge is one necessary for the administration of justice from which a judge should not be permitted to withdraw without sufficient ground.' As said in Ex parte State Bar Association, 92 Ala. 117, 8 So. 769: 'It can never rest in the discretion of a judge whether he shall sit in a given case. If he is not disqualified under the Constitution, it is his duty to sit—a duty he cannot delegate or repudiate, and which no consent can devolve upon another.'

"Quite true it is that the judge has no concern in presiding on the trial of any particular case, and no litigant has any right to have a particular judge try his case; but every litigant under the Constitution and laws has the right to insist that his case be tried by the regular judge, if he is holding the court, unless he is shown to be disqualified, and it is essential to the orderly administration of justice and the integrity of the Constitution that judges appointed under it to administer its judicial power shall not be wrongfully driven from the judgment seats in any case. * * *

"It is not proof or evidence of the unfitness of the judge in a particular case that an honest but suspicious suitor, or a vicious and dishonest one, swears that he cannot obtain justice before him. Such an affidavit proves only the animus or belief of the man who makes it. It does not prove partisanship or personal prejudice or bias in the judge. If the judge is not biased or prejudiced in fact, a false allegation or imputation that he is, made in the affidavit of a litigant, cannot change the actual mental or moral status of a judge or unfit him to try a particular case. Affidavits cannot change a pure and impartial judge into a bad official. It is the existence of bias or prejudice, and not the charge, whether honestly or dishonestly made, which constitutes the disqualification."

In United States v. Fricke (D. C.) 261 F. 541, 545, the late Judge Mayer, of the Second Circuit of Appeals, but then District Judge, finding an affidavit of alleged bias insufficient, as we have here decided this of Robinson's to be, used this language in determining, notwithstanding the unjust attack upon him, to continue in the case—language which we also adopt and make our own:

"* * * With no knowledge of any kind whatever in respect of the merits of the case, and regarding an indictment as merely an accusation, and being fully conscious that I do not entertain any personal bias or prejudice of any kind or description in the case, * * * I should be faithless to my duty if I permitted the affidavit and certificate filed herein to disqualify me from hearing any further proceedings in this cause which may and do in orderly course be brought before me."

An historical episode of this character marked the trial of Boss Tweed in New York just 53 years ago. Judge Noah Davis, whose honorable career on the Nisi Prius Bench, is a tradition of the New York Bar, presided. Before him appeared a most distinguished array of counsel. On the eve of the trial, they offered the court an attempted recusation in

writing. It was disregarded, and Judge Davis, respecting its effect on his attitude, said:

"I shall proceed with this case. Indeed this extraordinary paper leaves me no alternative, if I have any self-respect whatever, but to go on."

Judge Jones, in the case in which quotation has been made (N. K. Fairbank Co., Ex parte, 194 F. 990), also uses language which we apply in its remotest implications to our attitude toward affiant Robinson:

"Every practitioner or judge of experience understands full well, under the circumstances of this case, that the statements in the application made in New Orleans, though in form the utterances of the defendant, were in fact and in truth the suggestions of some of its attorneys. Knowing how prone clients are to follow the advice of their attorneys, especially when they suggest that a judge is biased or prejudiced against them, no normal judge, with any regard for the oath of his office or the ordinary instincts of fair play, would blame the defendant here for following the advice of its attorney, or would be tempted, much less permit himself, to do injustice to the client on the merits of the case, because it had taken the advice of its attorney."

We reflect, in addition to what these eminent judges have said, that to allow a disinclination to further sit in this case to work our voluntary retirement would be to permit the authors of this attack, who, we must assume, are participating counsel alone, to gain unlawfully that which they are not justly entitled to have. This would be unjustifiable from any aspect, and an invasion of the right of the plaintiff to have her case tried, if legally proper, before the judge whose regular assignment of duties is to try the cases brought into the court over which he regularly and immediately presides. Our oath of office is, among other things, to administer justice between litigants before us without fear or favor. If we may not now observe this oath in this case, it would be because we have not the courage to follow its injunctions under all circumstances, and a voluntary withdrawal would give rise to an inference that such was the fact.

We conceive it to be our clear duty to forget the unpleasant incidents referred to, and to continue to sit in this case, discharging the annoyances which they occasioned.

For reasons given, this affidavit and application must be and it is ordered stricken from the files.