## UNITED STATES v. BUCK et al.

### No. 13754.

District Court, W. D. Missouri, W. D.
March 10, 1938.

504

Bruce Barnett, of Joplin, Mo., and Price Wickersham, of Kansas City, Mo., for defendant Frances Ryan.

Maurice M. Milligan, Randall Wilson, and Sam Blair, all of Kansas City, Mo., for the United States.

James Daleo, of Kansas City, Mo., for other defendants.

OTIS, District Judge.

There have been filed in this case two motions for new trial and in arrest of judgment, one the joint motion of all defendants who were found guilty by the jury, including the defendant, Frances S. Ryan, and the other the separate motion of the defendant, Frances S. Ryan.

There is nothing in either of these motions, with the exceptions presently to be noted, which has not been made the sub-

ject of a memorandum in this case or of memoranda filed in other cases, or of opinions handed down in other cases by the United States Circuit Court of Appeals for the Eighth Circuit.

■ 1. In the joint motion of all of the defendants criticism is expressed of the reference in the charge of the court to the fact that in the event any defendant was found guilty by the jury he would receive neither the maximum nor the minimum punishment provided by the statute. It is scarcely necessary, however, to refer to that matter. The very first argument to the jury by any of the attorneys for the defendants, being the argument by Mr. Swanson, began with the reading to the jury of the statute, including that part of the statute setting out the maximum punishment which might be imposed. Counsel then developed his argument by seeking to impress upon the jury that although the statute provided for a minimum punishment of a day in jail or a dollar fine, that no such punishment could be expected from the presiding judge in the event of a verdict of guilty. With the possible exception of counsel representing Mrs. Ryan (who say that they made no reference to the matter of punishment) every one of the six attorneys who argued for the defendants in this case dwelt on the fact that a penitentiary sentence might be imposed upon the defendants by the presiding judge. There was never in any case over which we have presided any such enlargement upon the subject of punishment possible under the statute. It is inconceivable that any one can believe that under such circumstances the presiding judge should not have referred at all to that matter in the charge. In what possible way could any defendant have been prejudiced by the fact that the jury was told that if that defendant was found guilty he would receive substantial and not a merely trifling punishment? In what possible way was any defendant prejudiced because the judge told the jury (after attorneys over and over again had referred to the maximum punishment provided in the statute) that the maximum punishment would not be imposed on any defendant? This particular complaint seems to be bottomed upon the theory that attorneys for defendants on trial in a criminal case may capitalize in their arguments the provision in a law touching the maximum punishment, but that the judge must do nothing to correct a misleading impression thus sought to be induced in the minds of the jury.

■ 2. Both the motions, and particularly the motion of Mrs. Ryan, call attention to the affidavits of prejudice which were filed and which were ruled to be insufficient. Reference is made to the several memoranda dealing with this same subject heretofore filed in this and companion cases. We do not suppose that the situation can at all be changed by an affirmation on our part, which is undoubtedly the truth, towit, that there is no basis in fact whatever for the several charges of bias and prejudice. Without regard to that, we would have yielded to the affidavits if there was any possibility that could have been done without greatly hampering and hindering the administration of justice in this district. Each of these cases requires approximately one week for its trial. Judge Reeves has the same number of these cases as have fallen to us. Two of the judges of this district have each devoted more than a month of hard labor to these so-called vote fraud cases during the last year. Our colleague, Judge Collet, has felt that he should not try any of them. The utter impracticability or at least the very great difficulty of bringing in an outside judge to try cases requiring so much time and so disrupting the work of the outside judge in his own court must be at once apparent to any impartial observer.

If it was possible to avoid any such result as that, so damaging to the work of this district and to the work of other districts, it was certainly our duty to avoid that result. We consider that we would have been most deserving of criticism if we had lightly, or except for the gravest reasons, stepped aside from our post of duty. We call attention again to the fact that we have hitherto caused the questions raised by these affidavits of prejudice to be presented to the Court of Appeals and that that court never has ruled that they were sufficient, although it might well have done so if it believed that they were sufficient. Especially do we again call attention to the fact that the sufficiency of a similar affidavit of prejudice was actually involved in one of the cases which was appealed to the Circuit Court of Appeals, Walker v. U. S., 8 Cir., 93 F.2d 792, which reversed and remanded the case for a new trial without any suggestion that by

reason of the affidavit of prejudice the judge by whom the case had been tried should not try it the second time.

There is one point which has not yet been made in any of the memoranda dealing with affidavits of prejudice in this and other cases. While we have no doubt that the refusal of a trial judge to disqualify when an affidavit clearly sufficient has been filed against him is error, and reversible error, we have no doubt also that where the sufficiency of an affidavit is at least debatable, if the judge refuses to disqualify, the reviewing court will consider whether actually in the trial of the case any prejudice was manifested toward the affiant by erroneous rulings or by the manner and demeanor of the judge towards the affiant. The statute, Jud.Code § 269, 28 U.S.C.A. § 391, which provides that no case shall be reversed except for prejudicial error certainly applies to this kind of alleged error as well as to any other kind of alleged error. With that in mind, we say in this memorandum that we shall be amazed if any reviewing court can find in the record in this case the slightest evidence of any bias or prejudice against any of the defendants. We think it will be found that in every doubtful case where a ruling was required, the doubt was resolved in favor of the defendants and against the government. We think it will be found that the defendants, and each of them, was dealt with not only with no bias and with no prejudice, but with great kindness and consideration.

3. Certain specific instructions were asked by the defendant Ryan, which were refused. We wish to set out here our reasons for refusing those particular instructions.

The defendant Ryan requested the Court to instruct the jury as follows:

"The court instructs the jury that there is no evidence that or from which to infer that there was any unlawful conduct or intent upon the part of the defendant Frances S. Ryan with reference to any registration of voters for the purpose alleged in the indictment or for any other purpose."

We refused this requested instruction because it does not truthfully state to the jury the situation developed by the evidence. There was evidence that Mrs. Ryan paid money to one of her co-defendants on account of "registration." That that was evidence from which unlawful conduct or intent upon her part might be inferred is too obvious to merit argument or discussion.

The defendant Ryan requested the Court to instruct the jury as follows:

"The court instructs the jury that there is no evidence that or from which to infer that the defendant Frances S. Ryan or any person acting for her or by her direction or upon her request or at her instigation ever caused or procured any election judge or clerk in the fifteenth precinct of the twelfth ward to be removed for any unlawful purpose alleged in the indictment or for any unlawful purpose whatsoever."

This requested instruction was refused because there was evidence from which it might be inferred that the defendant Ryan had paid money to certain parties to procure the removal of election judges in the precinct and ward referred to.

The defendant Ryan requested the Court to instruct the jury as follows:

"The court instructs the jury that the fact that Elva O'Byrne has pleaded guilty constitutes no evidence whatsoever as to or against the defendant Frances S. Ryan and such fact must not be considered for any purpose other than as a reason for great caution in considering and weighing the testimony of said witness Elva O'Byrne."

This instruction was refused, if it was refused, because it does not correctly state the law. We do not consider that the mere fact that one has pleaded guilty to an offense which is the subject matter of the very trial in which that person is a witness is any reason for receiving the witness' testimony with great caution. The jury were instructed in the general charge touching the credibility of witnesses, that in passing upon the credibility of the testimony of any witness the interest of that witness in the outcome of the trial might be considered. That certainly was all that any defendant had a right to ask as against a witness, merely considering that the witness had pleaded guilty.

The defendant Ryan requested the Court to instruct the jury as follows:

"The Court instructs the jury with reference to the testimony of the witness Elva O'Byrne that the defendant Frances S. Ryan paid one hundred dollars to said witness and one hundred dollars to one

Lester Aulgur prior to September 21, 1936, there is no evidence that or from which to infer that such money, if so paid, was paid for the purpose of depriving any citizen or citizens of the United States of the right to vote or to have such vote or votes truly counted, returned and certified or to deprive any such citizen or citizens of any other lawful right or privilege or for any unlawful purpose alleged in or by the indictment in this case."

This requested instruction was refused for several reasons, among others, for the reason that it is not true that the payment of money to achieve a false registration (which might be as well a depriving of persons entitled to register from registering as the registering of ghost voters) is no evidence that such money was paid for the purpose of depriving citizens of the right to vote or to have such vote or votes truly counted. It might be evidence of that very thing. The defendant was sufficiently protected when the jury was charged, as it was repeatedly charged, that she could be convicted in this case only of the crime specifically set out in the indictment, and over and over again clearly described to the jury.

The defendant Ryan requested the Court to instruct the jury as follows:

"The court instructs the jury with reference to the testimony of witness Elva O'Byrne that the defendant Frances S. Ryan paid forty dollars to be divided between said Elva O'Byrne and one Lester Aulgur, that there is no evidence that or from which to infer that such money, if so paid, was paid for any unlawful purpose alleged in the indictment in this case or for any unlawful purpose whatsoever."

This requested instruction was refused for the obvious reason that it did not state the truth to the jury. The forty dollars referred to in the requested instruction was forty dollars paid for the purpose of securing the removal of election judges and the substitution of others. To say that that was·evidence from which an unlawful purpose could not be inferred is scarcely to be thought of.

The defendant Ryan requested the Court to instruct the jury as follows:

"The court instructs the jury that there is no evidence that or from which to infer that the defendant Frances S. Ryan or any person or persons acting for her or by her direction or upon her request or at her instigation ever gave any direction to the defendant Ellis Buck, or the defendant Sam Brenner, or to the defendant Viola Doss, or to the defendant Louise Davis, or to the defendant Ruth Tucker or to the defendant Frances M. Eaton or to the defendant Herman Supofsky or to the defendant Elva O'Byrne or to any other person or persons whomsoever to cause any vote or votes to be counted for C. Jasper Bell or any vote or votes not to be counted for Paul Byrum for the office of member of the House of Representatives of the Congress of the United States of America."

It is perhaps true that there was no testimony in the case such as is literally described in this requested instruction. Certainly, however, there was such evidence in the case as would justify the inference that the defendant Ryan had instigated others of the defendants to accomplish the very things which were accomplished in this precinct and which included the false certification of votes cast for the office of member of Congress. It was on that account that the requested instruction was refused.

The defendant Ryan requested the Court to instruct the jury as follows:

"The court instructs the jury that there is no evidence that or from which to infer that the defendant Frances S. Ryan or any person or persons acting for her or by her direction or upon her request or at her instigation ever gave any direction to the defendant Ellis Buck or the defendant Sam Brenner, or to the defendant Viola Doss, or to the defendant Louise Davis or to the defendant Ruth Tucker or to the defendant Frances M. Eaton or to the defendant Ernest Williams or to the defendant Herman Supofsky or to the defendant Elva O'Byrne or to any other person or persons whomsoever to cause any vote or votes to be counted, returned or certified as having been cast for C. Jasper Bell for the office of member of the House of Representatives of the Congress of the United States of America other than such votes as were actually and lawfully cast for him, the said C. Jasper Bell for such office, or to cause any vote or votes actually and lawfully cast for Paul Byrum for such office not to be counted, returned or certified as having been cast for him the said Paul Byrum for said office."

This requested instruction was refused for exactly the same reasons as was the

508

requested instruction last above referred to in this memorandum.

Order.

The motions for new trial are overruled. Exceptions are allowed to each defendant.