UNITED STATES of America

v.

John P. GILBOY, Jr., William J. Green, Jr., Joseph Rochez, Frederick J. Raff, Robert W. Brown, John B. Kemmel, Herbert J. McGlinchey.

Crim. No. 12880.

United States District Court
M. D. Pennsylvania.
May 9, 1958.

Oliver Dibble, Special Asst. to the Atty. Gen., Frank J. Kiernan, Special Atty., Dept. of Justice, Washington, D. C., for plaintiff.

John Patrick Walsh, Philadelphia, Pa., James E. O'Brien, Scranton, Pa., for defendant.

JOHN W. MURPHY, Chief Judge.

Defendant, William J. Green, Jr., charged with conspiracy to defraud the United States, 18 U.S.C. § 371,[1] purporting to comply with 28 U.S.C. § 144,[2] made and filed an affidavit asserting his belief that the judge before whom the matter is pending is "personally prejudiced against" him. Therewith was a certificate of counsel that the affidavit was made in good faith. Defendant moves that the judge proceed no further herein; that another judge be assigned to hear such proceeding.

The government moves to strike the affidavit as not timely or legally sufficient. Defendant contends (1) a motion to strike is not proper; that the motion

---

1. See indictment, defendant's Ex. A.

2. "Whenever a *party to any proceeding* in a district court makes and files a *timely and sufficient affidavit* that the judge before whom the matter is *pending* has a *personal bias or prejudice either against him* or in favor of any *adverse party,* such judge shall *proceed no further therein,* but another judge shall be assigned *to hear such proceeding.*

"*The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists,* and shall be *filed not less than ten days before the beginning of the term at which the proceeding is to be heard,* or *good cause* shall be *shown* for failure to file it within such time. A party may file only one such affidavit in any case. It shall be *accompanied by a certificate of counsel of record stating that it is made in good faith.* June 25, 1948, c. 646, 62 Stat. 898, as amended May 24, 1949, c. 139, § 65, 63 Stat. 99." (Italics supplied).

to disqualify is an ex parte proceeding; (2) that there is no authorization for any party to move or request that any particular judge be assigned to hear such proceeding.[3]

In this district we have only two full time judges. At Scranton we have a March and October term. The court is always open for business. Jury trials are held throughout the year. While the same judge was presiding: the grand jury returned the present indictment;[4] upon the court's order defendant was arrested; arraigned in open court, defendant plead not guilty[5] and moved to dismiss the indictment, for a bill of particulars, and for a severance of his trial from that of the other defendants, to transfer the place of trial from Scranton to Harrisburg, and for discovery and inspection. After hearing arguments on all of defendant's motions,[6] the court advised counsel that, once the motions were disposed of, all open cases would be listed for trial, and suggested the possibility of a pre-trial. February 6, 1958, by written opinion[7] and orders, all of defendant's motions were denied, except that a modus oper-

andi as to discovery and inspection, within a defined area, was suggested with assurance that a definitive order would follow if a mutually satisfactory plan was not evolved. The case was otherwise ready for trial at the March term which would commence March 17, 1958.

March 5, 1958, Attorney James E. O'Brien, of counsel for defendant, having inquired and being advised that the case would be listed for trial at the March term and that in all probability the same judge would preside, stated that he was authorized by his co-counsel and defendant to advise that they were contemplating challenging the capacity of the judge to preside at the trial of this case.

During the afternoon of March 7, 1958, Attorney O'Brien informed the Clerk's office that he was expecting some papers from Philadelphia and asked if the office would remain open after the usual closing hour—5:00 P.M.—so that the papers might be filed. At 4:46 P.M. Attorney O'Brien advised the court he had just filed an affidavit, a certificate and a brief; that only two complete copies and one rough incompleted copy

3. Defendant overlooks the rights of the other parties, of the public, and the obligation of the judge's oath of office. It is the defendant who seeks to cause delay, disarrange the court's calendar, and upset the orderly administration of justice. Sanders v. Allen, D.C.S.D.Cal. 1944, 58 F.Supp. 417, 420; Benedict v. Seiberling, D.C.N.D.Ohio 1926, 17 F.2d 831, 841. Motions to strike were approved in Scott v. Beams, 10 Cir., 1941, 122 F.2d 777, 787, certiorari denied Brady v. Beams, 315 U.S. 809, 62 S.Ct. 794, 86 L.Ed. 1208; Mitchell v. United States, 10 Cir., 1942, 126 F.2d 550, 551; Refior v. Lansing Drop Forge Co., 6 Cir., 1942, 124 F.2d 440, 443, certiorari denied 316 U.S. 671, 62 S.Ct. 1047, 86 L.Ed. 1746; Currin v. Nourse, 8 Cir., 1934, 74 F.2d 273, 275; Lipscomb v. United States, 8 Cir., 1929, 33 F.2d 33, 34; Morse v. Lewis, 4 Cir., 1932, 54 F.2d 1027, at page 1031; United States v. Garden Homes, Inc., D.C.D.N.H.1953, 113 F.Supp. 415, 418, affirmed 1 Cir., 1954, 210 F.2d 281; Chafin v. United States, 4 Cir., 1925, 5 F.2d 592, 593.

4. One of thirteen against various defendants—returned during an inquiry, April 4, 1956 to February 14, 1957—into the construction of the Tobyhanna Signal Depot, a military installation in this district.

5. Court convened at 2:00 P.M. Defendant and four co-defendants were promptly arraigned. At 2:15 P.M. arraignment of other defendants followed. Defendant was treated the same as any other party. As to judicial knowledge, see Benedict v. Seiberling, supra, 17 F.2d at page 836; Morse v. Lewis, supra, 54 F.2d at page 1029; Saunders v. Piggly-Wiggly Corp., D.C.W.D.Tenn.1924, 1 F.2d 582, at page 586; Wigmore on Evidence, 3rd Ed. § 2579.

6. Sixteen motions of co-defendants; 26 motions by defendants in the other twelve indictments.

7. United States v. Gilboy, D.C., 160 F. Supp. 442, including co-defendants' sixteen motions. Meanwhile by written opinions and orders all motions as to five of the other indictments were denied.

were received by him, apparently only moments before; that there was no copy for the court except the file copy—which being a public record should be available to all; and inquired whether the other copy should be served on the United States Attorney or the Attorney General, although the practice for years has been to serve a copy of all papers on each.

█ The mere filing of such an affidavit does not automatically disqualify the judge. Behr v. Mine Safety Appliances Co., 3 Cir., 1956, 233 F.2d 371, 372, certiorari denied 352 U.S. 942, 77 S.Ct. 264, 1 L.Ed.2d 237. The judge has a duty, In re Greene, 3 Cir., 1947, 160 F.2d 517, 518, to examine the affidavit and certificate to determine whether or not they are the affidavit and certificate specified and required by the statute—timely and legally sufficient. Berger v. United States, 1921, 255 U.S. 22, 32, 41 S.Ct. 230, 65 L.Ed. 481; Ex parte N. K. Fairbank Co., D.C.M.D.Ala. N.D.1912, 194 F. 978, at page 990. If the requirements are fully met the judge must step aside and another judge be assigned. If, however, they are not fully met, the judge has a duty to continue to preside and not permit a party by sheer whim to select the judge before whom his case shall be tried.[8] Curtis v. United States, D.C.D.N.J.1950, 91 F.Supp. 206, 209; Allen v. Dupont, D.C. D.Del.1948, 75 F.Supp. 546; 548; United States v. Valenti, D.C.D.N.J.1954, 120 F.Supp. 80, at pages 84, 89; United

States v. Pendergast, D.C.W.D.Mo.1940, 34 F.Supp. 269; Fieldcrest Dairies, Inc., v. City of Chicago, D.C.E.D.Ill.1939, 27 F.Supp. 258, at page 260; Benedict v. Seiberling, D.C.N.D.Ohio 1926, 17 F.2d 831, 841; Tucker v. Kerner, 7 Cir., 1950, 186 F.2d 79, at page 85, 23 A.L.R.2d 1027; Eisler v. United States, 1948, 83 U.S.App.D.C. 315, 170 F.2d 273, 278, certiorari dismissed 338 U.S. 883, 70 S. Ct. 181, 94 L.Ed. 542; Morse v. Lewis, 4 Cir., 1932, 54 F.2d 1027, 1031.

§ 144 provides, "The affidavit shall * * * be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time * * *." The Revisers Notes indicate that the words "at which the proceeding is to be heard" were added to clarify the meaning of "before the beginning of the term".[9]

█ A statute can rarely provide in express terms for all possible contingencies. Congress and the people must depend upon the courts to give statutes such interpretation as will express their spirit and tenor. Congress did not intend to make the right to disqualify unlimited and arbitrary. See and cf. Ex parte N. K. Fairbank Co., supra, 194 F. at page 1000. Although the statute is remedial, because of its nature and the possibilities of abuse, the orderly administration of justice requires that the affidavit and certificate be strictly con-

8. Regardless of personal convenience, embarrassment, feelings of delicacy or other considerations not amounting to legal disqualification, 30 Am.Jur. Judges § 93; 48 C.J.S. Judges, § 93; Benedict v. Seiberling, supra, 17 F.2d at page 841; Fieldcrest Dairies, Inc., v. City of Chicago, D.C.E.D.Ill.1939, 27 F.Supp. 258, at page 259; Saunders v. Piggly-Wiggly Corp., supra, 1 F.2d at pages 584, 588; United States v. 16,000 Acres of Land, etc., D.C.D.Kan.1942, 49 F.Supp. 645, at page 656; Cole v. Loew's Inc., D.C.S.D.Cal.1948, 76 F.Supp. 872, at page 880, affirmed Loew's Inc., v. Cole, 9 Cir., 1950, 185 F.2d 641, 646, certiorari denied 340 U.S. 954, 71 S.Ct. 570, 95 L.Ed. 688; United States v. Shibley, D.C.

S.D.Cal.1953, 112 F.Supp. 734, 748; Johnson v. United States, D.C.W.D. Wash.1929, 35 F.2d 355.

9. As to the distinction between a hearing and a proceeding, see N.L.R.B. v. Donnelly Garment Co., 1947, 330 U.S. 219, at page 225, 67 S.Ct. 756, 91 L.Ed. 854, and see Counselman v. Hitchcock, 1892, 142 U.S. 547, at pages 562–564, 12 S.Ct. 195, 35 L.Ed. 1110. As to the meaning of "proceeding", see Statter v. United States, 9 Cir., 1933, 66 F.2d 819, at page 822; 34 Words and Phrases, Proceeding, p. 152, and see Wyant v. Brennan, 4 Cir., 1936, 85 F.2d 920, 921. In a general sense, "proceeding" includes all possible steps in an action from its commencement on. Black's Law Dictionary, 3d Ed.

strued and the terms of the statute strictly followed. Cole v. Loew's Inc., D.C.S.D.Cal.1948, 76 F.Supp. 872, at page 875, affirmed Loew's Inc. v. Cole, 9 Cir., 1950, 185 F.2d 641, 656, certiorari denied 340 U.S. 954, 71 S.Ct. 570, 95 L.Ed. 688; United States v. Parker, D.C.D.N.J.1938, 23 F.Supp. 880, at page 882, affirmed 3 Cir., 1939, 103 F.2d 857; United States v. Valenti, supra, 120 F. Supp. at page 83; Curtis v. Utah Fuel Co., D.C.D.N.J.1944, 59 F.Supp. 680, affirmed 3 Cir., 1944, 148 F.2d 340; United States v. Flegenheimer, D.C.D. N.J.1935, 14 F.Supp. 584, at page 592, affirmed 3 Cir., 1936, 110 F.2d 379; Marquette Cement Mfg. Co. v. Federal Trade Commission, 7 Cir., 1945, 147 F.2d 589, 592; Fieldcrest Dairies, Inc., v. City of Chicago, supra, 27 F.Supp. at page 259; Scott v. Beams, 10 Cir., 1941, 122 F.2d 777, at pages 787, 788, certiorari denied Brady v. Beams, 315 U.S. 809, 62 S.Ct. 794, 86 L.Ed. 1208; Skirvin v. Mesta, 10 Cir., 1944, 141 F.2d 668, 672; Newman v. Zerbst, 10 Cir., 1936, 83 F.2d 973, at page 974; Burall v. Johnston, D.C.N.D.Cal.1943, 53 F.Supp. 126, 128, affirmed 9 Cir., 1944, 146 F.2d 230, certiorari denied 325 U.S. 887, 65 S.Ct. 1567, 89 L.Ed. 2001; Craven v. United States, 1 Cir., 1927, 22 F.2d 605, 608; In re Federal Facilities Realty Trust, D. C.N.D.Ill.1956, 140 F.Supp. 522, 524; Cuddy v. Otis, 8 Cir., 1929, 33 F.2d 577, at page 578; Beland v. United States, 5 Cir., 1941, 117 F.2d 958, at page 960; United States v. 16,000 Acres of Land, etc., D.C.D.Kan.1942, 49 F.Supp. 645, 651, 653; Nations v. United States, 8 Cir., 1926, 14 F.2d 507, at page 509; see and cf. Allen v. Dupont, supra, 75 F.Supp. at page 549. While the result is in agreement with other federal cases, see Id., 75 F.Supp. 550, in this particular Allen v. Dupont stands alone.

█ The indictment was returned and the arrest made in the October 1956 term; the arraignment and defendant's motions seeking affirmative relief and arguments thereon in the March 1957 term; the opinion and orders denying defendant's motions during the October 1957 term. It was not until after defendant failed to obtain favorable rulings on his motions, to receive special treatment or a "sign of recognition" at the arraignment [10] that he decided to file the affidavit and certificate seeking disqualification based upon matters which allegedly had occurred and were known to the defendant some years before the

10. See defendant's affidavit p. 4. See Judges' Oath. 28 U.S.C. § 372. United States v. Valenti, supra, 120 F. Supp. at page 89, " ' * * * I will administer justice without respect to persons * * * ' "; see United States v. Lee, 1882, 106 U.S. 196, at page 220, 1 S.Ct. 240, 27 L.Ed. 171. " * * * in the protection of their rights all are equal before the law", Cummings v. State of Missouri, 1866, 4 Wall. 277, at pages 321, 322, 71 U.S. 277, at pages 321, 322, 18 L.Ed. 356. "It may be that the individual litigant sometimes ascribes to himself an undue importance * * * when as a matter of fact * * * (the) judge may never think of the litigant as an individual, but only of the rights of the parties irrespective of their personnel." Saunders v. Piggly-Wiggly Corp., supra, 1 F.2d at page 585; United States v. 15.3 Acres of Land, etc., D.C.M.D.Pa.1957, 154 F. Supp. 770, at page 783; Ex parte Hague, 1928, 103 N.J.Eq. 505, 143 A. 836, 837. Deuteronomy 1:17, "Ye shall not respect persons in judgment; * * * ye shall hear the small as well as the great * * *" and see Rom. 2:11.

See Bourke Ethics (4th Printing 1957, MacMillan Co.) p. 344. The court should not indulge in adulation. And see Higgins "Man as Man"—Ethics (3rd Printing, 1950, Bruce Pub. Co.) p. 536. "The official must be impartial. Since the official bears the majesty of the State, he must act toward his fellow citizens as the State is bound to act. Now the State stands to its members in a twofold role: custodian of commutative justice and dispenser of public helps. In relation to the State as custodian of justice, all citizens are equal and their rights deserve equal protection. Hence persons who approach an official on business pertaining to commutative justice are to be treated with exact justice, without discrimination, prejudice, favoritism, or partiality. The official cannot be a respecter of persons: exemptions and favors given to friends are so many declensions from justice."

return of the indictment. No cause was shown for the delay.

Ex parte American Steel Barrel Co., 1913, 230 U.S. 35, at page 44, 33 S.Ct. 1007, at page 1010, 57 L.Ed. 1379, teaches that the section, applicable only in rare instances, " * * * was never intended to enable a discontented litigant to oust a judge because of adverse rulings made, for such rulings are reviewable otherwise, but to prevent his future action in the pending cause. Neither was it intended to paralyze the action of a judge who heard the case, or *a question in it*, by the interposition of a motion to disqualify him between a hearing and a determination of the matter heard * * *." (Italics supplied). And see Berger v. United States, supra, 255 U.S. at page 31, 41 S.Ct. at page 232.

"The statute, by its express terms, requires diligence in filing * * * and does not permit a litigant, after he has knowledge of the alleged bias or prejudice * * * without notice, to go forward in the cause before filing such affidavit after the facts of disqualification are known to him." Refior v. Lansing Drop Forge Co., 6 Cir., 1942, 124 F.2d 440, at page 445. "An affidavit filed long after the time fixed by the statute, and after the party * * * has participated in proceedings and has invoked or sought to invoke the affirmative action of the court in his behalf, without any cause being shown for the delay, does not comply with the exaction of the statute in respect of time." Skirvin v. Mesta, supra, 141 F.2d at page 672, and see Chessman v. Teets, 9 Cir., 1956, 239 F.2d 205, at page 215; Callwood v. Callwood, D.C.D. Virgin Islands, 1954, 127 F.Supp. 179, at page 183; Tennessee Pub. Co. v. Carpenter, 6 Cir., 1938, 100 F.2d 728, at page 734, certiorari denied 306 U.S. 659, 59 S.Ct. 775, 83 L.Ed. 1056.

"Any well functioning system * * * should * * * require immediate challenge to the eligibility of the judge as soon as the facts leading to apprehension of bias become known; strict compliance upon waiver in the absence of such protest is necessary to prevent last minute 'discovery' of bias * * *." Note 15 Yale L. Jnl. 169 at 175, and see 30 Am. Jur. Judges, § 95, 48 C.J.S. Judges § 95 b. "Promptly on * * * discovery * * *" Id. § 94 c; "with reasonable promptitude * * *" Scott v. Beams, supra, 122 F.2d at pages 788, 789; "at the nearest available time * * *" Shea v. United States, 6 Cir., 1918, 251 F. 433, 435, certiorari denied 248 U.S. 581, 39 S.Ct. 132, 63 L.Ed. 431; Lipscomb v. United States, supra, 33 F.2d at page 34; Bommarito v. United States, 8 Cir., 1932, 61 F.2d 355, 356; Hibdon v. United States, 6 Cir., 1954, 213 F.2d 869; Chafin v. United States, supra, 5 F.2d at pages 594, 595, and see and cf. Agnew v. United States, 1897, 165 U.S. 36, at page 44, 17 S.Ct. 235, 238, 41 L.Ed. 624. " * * * defendant must take the first opportunity in his power to make the objection."

" * * * the circumstances were such as to justify belief that the affidavit was purposely held back, and its use on the eve of trial resorted to for the purpose of securing a postponement." Shea v. United States, supra, 251 F. at page 435.

Timeliness is a matter of substance not merely one of form. United States v. Parker, supra, 23 F.Supp. at page 885; United States v. 16,000 Acres of Land, etc., supra, 49 F.Supp. at page 656. The privilege is waived by failure to use due diligence. Kramer v. United States, 9 Cir., 1948, 166 F.2d 515, at page 518; Laughlin v. United States, 1945, 80 U.S. App.D.C. 101, 151 F.2d 281, at page 284; Taylor v. United States, 9 Cir., 1950, 179 F.2d 640, 642; Coltrane v. Templeton, 4 Cir., 1901, 106 F. 370, at pages 376, 377; Neil v. United States, 9 Cir., 1953, 205 F.2d 121, 125; Utz & Dunn Co. v. Regulator Co., 8 Cir., 1914, 213 F. 315, at page 319; 48 C.J.S. Judges § 95 b, supra; 30 Am.Jur. Judges, § 95; cf. Borough of Hasbrough Heights, N. J. v. Agrios, D.C.D.N.J.1935, 10 F.Supp. 371, 374.

"Thus construed, the statute affords a party full opportunity to prevent the

trial of his case by a judge against whom he can state under oath facts showing bias or prejudice. At the same time it affords to the other party and to the public protection against unnecessary surprise, delay, and expense * * *" Chafin v. United States, supra, 5 F.2d at page 595.

At the very latest objection should have been made before arguments were heard on defendant's motions.

The affidavit and certificate were not timely.

As to the certificate itself, § 144 provides: "It (the affidavit) shall be accompanied by a certificate of counsel of record stating that it is made in good faith." Berger v. United States, supra, 255 U.S. at pages 30, 33, 37, 41 S.Ct. at pages 232–234; Scott v. Beams, supra, 122 F.2d a page 787; Skirvin v. Mesta, supra, 141 F.2d at page 672; United States v. 16,000 Acres of Land, etc., supra, 49 F.Supp. at page 651; Cuddy v. Otis, supra, 33 F.2d at page 578; Foster v. Medina, 2 Cir., 1948, 170 F.2d 632, at page 633, and cf. Mitchell v. United States, supra, 126 F.2d at page 551, teach that the certificate should state that the *affidavit and application* were made in good faith. Here only the affidavit is covered. Although Attorney John Patrick Walsh, of Philadelphia, entered his appearance by letter and thereafter appeared with Attorney O'Brien as counsel for defendant at the arraignment, he is not and never has been a member of the bar of this court, see Rules of Court, Roll of Attorneys; United States v. Bergamo, 3 Cir., 1946, 154 F.2d 31; Ex parte Secombe, 1856, 19 How. 9, at page 13, 60 U.S. 9, at page 13, 15 L.Ed. 565, and therefore not one of "counsel of record" within the mean-

ing of the statute.[11] Currin v. Nourse, supra, 74 F.2d at page 275. "It is important that the court * * * shall at least have the protection afforded by the certificate of a responsible member of the bar." Morse v. Lewis, supra, 54 F.2d at page 1032; Saunders v. Piggly-Wiggly Corp., supra, 1 F.2d at pages 587, 588; Newman v. Zerbst, supra, 83 F.2d at page 974. "This requirement is founded on the assumption that a member of the bar * * * will not indulge in reckless disregard of the truth and * * * attests to the good faith and belief of the affiant." Mitchell v. United States, supra, 126 F.2d at page 552; Beland v. United States, supra, 117 F.2d at page 960; United States v. Garden Homes, Inc., supra, 113 F.Supp. at page 418; United States v. Onan, 8 Cir., 1951, 190 F.2d 1, at page 6.

"A motion to disqualify * * * is a serious undertaking * * *." Denis v. Perfect Parts, Inc., D.C.D.Mass.1956, 142 F.Supp. 263; see Id. as to the amount of preparation exercised by counsel, and cf. Rule 11, F.R.Civ.Proc., 28 U.S.C. and see 2 Moore Fed.Prac. § 11.02, p. 2103, as to the moral and professional obligations of counsel in signing and presenting pleadings. In Eisler v. United States, supra, 170 F.2d at page 283, Judge Prettyman suggests " * * * these affidavits should be prepared with the utmost care and certainty as to the facts. The courts should encourage careful consideration and deliberation on the part of counsel * * *. The rule ought to be that they be filed with the utmost deliberation consistent with the undelayed dispatch of the business of the court." And see In re Crawford's Estate, 1931, 307 Pa. 102, at page 109, 160 A. 585, at page 587, "The charge of

11. " * * * 'counsel of record' in the statute means an attorney at law admitted to the bar of the court. * * * One who is not a member of the bar cannot be counsel of record even though the record on its face may show he had undertaken to appear as counsel." Currin v. Nourse, supra, 74 F.2d at page 275.

At the arraignment out of the district counsel for defendants Rochez, Brown and Kemmel were on motion admitted pro hac vice. Despite the suggestion of Attorney Walsh's co-counsel and the fact that the court would be prompt to oblige, no such motion was made on his behalf. Out of the district counsel for the government were on motion admitted specially.

**392**

disqualification is serious, and should not be made lightly or frivolously."

"It need scarcely be said that it is the duty of a lawyer to maintain toward the courts a respectful and courteous attitude, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance: Canon 1 of the American Bar Association Code of Professional Ethics." Levines Contempt Case, 1953, 372 Pa. 612, at pages 621–622, 95 A.2d 222, at page 226. "Counsel of record * * * has an obligation to the court as well as to his client, and * * * a public duty to aid the administration of justice, to uphold the dignity of the court and respect its authority." United States v. Onan, supra, 190 F.2d at pages 6, 7, and see Craven v. United States, supra, 22 F.2d at page 608, as to the danger of " * * * overzealous counsel, scanting their professional duty to the public weal and to the court as the protector of the public right, as a method of procuring delay * * * " And see Bishop v. United States, 8 Cir., 1926, 16 F.2d 410, 411. "Every consideration of fair dealing with the court requires that parties * * * must not make the statute a mere instrumentality for delay."

■ While the belief is that of the defendant, the good faith certified to as to the affidavit and certificate includes that of counsel. See and cf. Mitchell v. United States, supra, 126 F.2d at page 551; 48 C.J.S. Judges § 94, p. 1097, supra; United States v. Parker, supra, 23 F.Supp. at page 886; United States v. Flegenheimer, supra, 14 F.Supp. at page 592. While defendants and their counsel should be free of embarrassment in making such charge when just ground exists, In re Crawford's Estate, supra, 307 Pa. at page 109, 160 A. at page 587, and see Levines Contempt Case, supra, 372 Pa. at page 625, 95 A.2d at page 233, and each case must be governed to a large

extent by its own particular facts, Bishop v. United States, supra, 16 F.2d at page 411, counsel undertaking to sign a certificate to disqualify should be able to afford more deliberation and study than a momentary look, signing a certificate and a lengthy brief, and a rush to meet a filing deadline therein. To let such a certificate stand under the circumstances would be contra to the teachings of all the cases in the United States courts of which this court is aware.

■ The test for determining the sufficiency of the affidavit of bias and prejudice was laid down by the Supreme Court in Berger v. United States, supra, 255 U.S. at page 33, 41 S.Ct. at page 233, " * * * the reasons and facts for the belief the litigant entertains are an essential part of the affidavit, and must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment"; and we add regarding the justiciable matter pending. Hurd v. Letts, 1945, 80 U.S.App. D.C. 233, 152 F.2d 121, 122; Eisler v. United States, supra, 170 F.2d at page 278; United States v. Valenti, supra, 120 F.Supp. at page 85; Foster v. Medina, supra, 170 F.2d at page 633; Ex parte American Steel Barrel Co., supra, 230 U.S. at page 43, 33 S.Ct. at page 1010.[12] " * * * facts from which a sane and reasonable mind may fairly infer bias or prejudice." Keown v. Hughes, 1 Cir., 1920, 265 F. 572, 577; Hurd v. Letts, supra, 152 F.2d 121.

■ Mere rumors or gossip are not enough. Berger v. United States, supra, 255 U.S. at page 33, 41 S.Ct. at page 233. Time, place, persons, occasions and circumstances must be set forth, Johnson v. United States, supra, 35 F.2d at page 357; Morse v. Lewis, supra, 54 F.2d at page 1031; United States v. Parker, supra, 23 F.Supp. at page 884, with at least the degree of

12. " * * * a well-grounded belief * * * ", Mitchell v. United States, supra, 126 F.2d at page 552, " * * * which logically support the conclusion * * * " United States v. Valenti, supra,

120 F.Supp. at page 85; not scandalous or irrelevant matter, Keown v. Hughes, supra, 265 F. at page 577; Nations v. United States, supra, 14 F.2d 507.

particularity one would expect to find in a bill of particulars. Wilkes v. United States, 9 Cir., 1935, 80 F.2d 285, 289; Morse v. Lewis, supra, 54 F.2d at page 1032; cf. Nations v. United States, supra, 14 F.2d at page 509. So plainly that one may determine whether they suffice to show the objectionable inclination or disposition of the judge and to support an honest belief in the disqualifying state of mind. Berger v. United States, supra, 255 U.S. at pages 35, 42, 41 S.Ct. at pages 233, 236. A prima facie case will not suffice. "It must be strong enough to overthrow the presumption in favor of the trial judge's integrity and of the clearness of his preceptions." Ex parte N. K. Fairbank Co., supra, 194 F. at page 990; and see Craven v. United States, supra, 22 F.2d at page 608; Berger v. United States, supra, 255 U.S. at page 38, 41 S.Ct. at page 234; and see United States v. 16,000 Acres of Land, etc., supra, 49 F.Supp. at page 650, " * * * about which there is no reasonable doubt", and see and cf. Adams v. United States ex rel. McCann, 1942, 317 U.S. 269, at page 281, 63 S.Ct. 236, at page 242, 87 L.Ed. 268, 143 A.L.R. 435, " * * * not as a matter of speculation but as a demonstrable reality"; and see and cf. Reynolds v. United States, 1878, 98 U.S. 145, 154–157, 25 L.Ed. 244; Goldstein v. United States, 8 Cir., 1933, 63 F.2d 609, at page 614.

 It must on its face give evidence of good faith. Fieldcrest Dairies, Inc., v. City of Chicago, supra, 27 F.Supp. at page 260; Wilkes v. United States, supra, 80 F.2d at page 289; United States v. Parker, supra, 23 F.Supp. at page 884.

Such requirements are a precaution against abuse, remove the averments and

belief from the irresponsibility of unsupported opinion, and add to the certificate of counsel the supplementary aid of the penalties attached to perjury, Berger v. United States, supra, 255 U.S. at page 33, 41 S.Ct. at page 233, and for connivance therein by counsel or lack of good faith in making the certificate the possibility of disbarment or censure or an indictment for conspiracy. Benedict v. Seiberling, supra, 17 F.2d at page 838; Johnson v. United States, 35 F.2d at page 357; Denis v. Perfect Parts Inc., supra, 142 F.Supp. at pages 263, 264. Such insistence will cause defendants and their counsel ·to be more careful, deliberate and accurate. If such tests are not required there would be but little possibility of invoking sanctions much less their being carried to a successful conclusion. United States v. Parker, 23 F.Supp. at page 884.

 In determining legal sufficiency we may not pass upon the truth of the allegations however gross, perverse, false or malicious they may be. For present purposes we must assume the truth of all well plead allegations. Berger v. United States, supra, 255 U.S. at page 32, 41 S.Ct. at page 232.[13] This does not mean that any charge a party may choose to make is presumed to be true in fact. Chafin v. United States, supra, 5 F.2d at page 594. The statute is not concerned with the actual state of mind of the judge or the litigant but only with what the latter is willing to incorporate in an affidavit and his counsel to indorse. Johnson v. United States, supra, 35 F.2d at page 357.

 The bias or prejudice must be personal—possessed by the judge and specifically applicable to and against the affiant or in favor of an adverse party.

---

13. Cf. the rule in passing upon a motion to dismiss an indictment. United States v. Gilboy et al, supra, Note 7, and see United States v. Foster, D.C.S.D. N.Y.1948, 81 F.Supp. 280, affirmed Foster v. Medina, 2 Cir., 170 F.2d 632, 633; " * * * not * * * speculative mental processes", United States v. Parker, supra, 23 F.Supp. at page 883; "* * purely prophetic * * * *", Craven v. United States, 22 F.2d at page 607;

United States v. Valenti, supra, 120 F. Supp. at page 88; not conclusions of law or unwarranted deductions of fact, Solomon v. Neisner Bros. Inc., D.C.M.D.Pa. 1950, 93 F.Supp. 310, at page 313; facts not baseless conclusions, Beland v. United States, supra, 117 F.2d at page 960; United States v. Valenti, supra, 120 F. Supp. at page 92; or conclusions per se, Inland Freight Lines v. United States, 10 Cir., 1953, 202 F.2d 169, 171.

Berger v. United States, supra, 255 U.S. at page 32, 41 S.Ct. at page 232; Henry v. Speer, 5 Cir., 1913, 201 F. 869, 872; Cole v. Loew's Inc., supra, 76 F.Supp. at page 875. "Personal", the significant word of the statute, is in contrast with "judicial". It characterizes an attitude of extra judicial origin. Craven v. United States, supra, 22 F.2d at page 607.[14] Disqualification does not arise solely on the basis of a bias or state of mind against wrongdoers acquired from evidence presented in the trial, Craven v. United States, supra, 22 F.2d at page 608, nor from the possession of definite views on the law, Henry v. Speer, supra, 201 F. at page 872; Cole v. Loew's Inc., supra, 76 F.Supp. at page 876, nor was it directed against an impersonal prejudice which goes to the judge's background and associations or experiences rather than an appraisal of the defendant personally. Price v. Johnston, 9 Cir., 1942, 125 F.2d 806, at page 811; Eisler v. United States, supra, 170 F.2d at page 278.

"The statute relates only to adverse opinion or leaning towards an individual and has no application to the appraisement of a class * * *" Berger v. United States, supra, 255 U.S. at page 42, 41 S.Ct. at page 236. "Intense dislike of a class does not render the judge incapable of administering complete justice to one of its members." Id., 255 U.S. at page 43, 41 S.Ct. at page 236. The converse is true. See and cf.

Askounes' Liquor License Case, 1941, 144 Pa.Super. 293, at page 298, 19 A.2d 846; Baskin v. Brown, 4 Cir., 1949, 174 F.2d 391, at page 394, and see United States v. Flegenheimer, supra, 14 F.Supp. at page 592, quoting from State of New Jersey v. Bolitho, 103 N.J.L., 246, 136 A. 164, at page 168, "We may safely assume that every law-abiding citizen is naturally at war with violators of the law and hence is more or less interested in the suppression of crime, which interest springs, not only from a sense of self-protection, but also from a duty to protect the community as well, against unlawful acts of its members * * * to entertain the notion * * * that such an interest * * * disqualifies a judge * * * from sitting in judgment, impartially, between the state and the accused * * * would deal a disastrous blow to our judicial system." A judge cannot be disqualified merely because he believes in upholding the law. United States v. Flegenheimer, supra, 14 F.Supp. 584, 592.[15]

■ Assuming arguendo the truth of all well plead allegations, are they, in the light of the foregoing, sufficient to disqualify? We think not.

Such allegations can be properly evaluated only when placed in their historical context. Cf. Foster v. Medina, supra, 170 F.2d at pages 633, 634.

As a member of Congress from January 3, 1943 to July 17, 1946, serving on

14. "Every * * * judge, when he hears a case or writes an opinion must form an opinion on the merits and oft times no doubt an opinion relative to the parties involved." Tucker v. Kerner, supra, 186 F.2d at page 84.

"He must do his best to ascertain their (the witnesses) motives, their biases, their dominating passions and interests, for only so can he judge of the accuracy of their narrations. He must also shrewdly observe the strategems of the opposing lawyers, perceive their efforts to sway him by appeals to his predilections. He must cannily penetrate through the surface of their remarks to their real purposes and motives. He has an official obligation to become prejudiced in that sense. Impartiality is not gullibility. Disinterestedness does not mean childlike innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." In re J. P. Linahan, Inc., 2 Cir., 1943, 138 F.2d 650, at page 654, and see In re Beecher, D.C.E.D.Wash.1943, 50 F.Supp. 530, 533.

15. The practice in Pennsylvania is substantially similar. See In re Crawford's Estate, supra, 307 Pa. at pages 108, 109, 160 A. at page 587; Pennsylvania Publications, Inc., v. Pennsylvania Public Utility Commission, 1943, 152 Pa.Super. 279, at 296 et seq., 32 A.2d 40.

eleven committees,[16] including the Joint Committee of the House and Senate on the Pearl Harbor Attack,[17] the judge met and became acquainted with almost all of the members of the House on both sides of the aisle (434 in all, including 33 from Pennsylvania), and a great many of the ninety-six Senators. January, 1945, he met for the first time, as a newly elected first term member from Philadelphia, Congressman William J. Green, Jr.[18] Although serving on different committees, the usual amenities exchanged between gentlemen and among colleagues were observed.

Having been nominated by the President and by and with the advice and unanimous consent of the Senate appointed on May 17, 1946, as United States District Judge, after submission of the report of the Joint Committee on July 16, 1946, and a few words of farewell,[19] the judge resigned from the House on July 17, 1946. Next day the oath of office was administered in the office of the Attorney General by the then Chief Justice of the United States.[20]

March 1953 the judge's son interrupted his course of studies and enlisted as a private in the United States Army for three years. After basic training at Indiantown Gap he was sent overseas in August 1953 and assigned to the 7867th Quartermaster Depot Group at Metz in the Alsace Lorraine area. Upon request Congressman Green's secretary obtained from the Army and forwarded a German and French Phrase Book,[21] and in July 1954 a health and welfare report.[22] September 1955, after an acute attack of rheumatic fever, the judge's son was taken from the dispensary at Metz to the 46th Field Hospital at Verdun. Upon recovery he was returned to his post of duty at Metz. Early in 1956, his normal rotation date having arrived after twenty-nine months overseas, he was returned to the United States and in February 1956, honorably discharged as a corporal, and resumed his studies at the University.

December 1954, one who had served as Assistant Postmaster General and as District Director, Internal Revenue Serv-

16. Inter alia on Interstate and Foreign Commerce, succeeding after a brief interim to the seat of a friend and colleague, Honorable Francis J. Myers, after his election in November 1944 to the United States Senate.

17. The latter very exacting and time consuming, extended from November 15, 1945 to July 16, 1946; hearing, receiving and examining about 15,000,000 words of testimony and exhibits; questioning inter alia the leading officers of the Army and Navy; inquiring into their functions and the operations of the armed services, and preparing the committee's many volumned report and exhibits. As to membership, see defendant's Ex. B1.

18. And Herbert J. McGlinchey. The only counsel of record for defendant McGlinchey disavows any connection with this motion.

19. See defendant's Ex. B1. "Back home we have a challenge * * * I would like to see that court hold a place of honor, integrity and prestige among the courts of the nation and I shall try as earnestly and diligently as I can to see that objective is accomplished."

See 41 Harv.L.Rev. 121 at 127, footnote 27, quoting Mr. Justice Holmes, "We cannot live our dreams. We are lucky enough if we can give a sample of our best, and if in our hearts we can feel that it has been nobly done." See Id. at 126, 127, and see article, 56 Yale L.Jnl. 605 at 625, discussing the significance of prior public service.

20. The appointment was recommended by: the sub-committee of the House Judiciary Committee investigating the matter, the Majority Leader, the Speaker of the House, the Democratic National Committeeman from Pennsylvania, the Chairman of the Democratic National Committee, the Senior and Junior Senators from Pennsylvania, and the Attorney General of the United States. It was supported by the good will and good wishes of the Minority leadership, and almost the entire membership of the House on both sides of the aisle.

21. TM30–602 and 606, available to all unit commanders for free distribution to the armed services; and later to the public at fifteen cents each.

22. The local Red Cross Chapter processed between 8500–9000 such requests since 1942.

ice, with headquarters in the United States Court House at Scranton, was being considered by the Governor-elect for a place in his cabinet. The judge wrote a letter of recommendation to the Governor-elect and to six members of the Policy Committee who might be consulted on the matter (including the defendant). In response the Governor-elect promptly replied stating that he was considering the gentleman for a position in his cabinet and that by the time the reply was received he may have selected him for a post in the new administration.[23]

Defendant states that since 1946 he has "seen" the judge at various functions; not more than four or five specific instances—and for only a few moments at a time—are given.

To bolster his case defendant asserts he is of the same national descent, religious and political persuasion as the judge. To a judge who has presided at the administration of the oath of citizenship to 2098 new citizens from 45 different countries such an allegation is somewhat surprising. Even an alien enemy under criminal prosecution must be afforded the usual constitutional safeguards. Eisler v. United States, supra, 170 F.2d at page 279. In approving this course, defendant's counsel put to one side the teachings of history. See Art. VI, United States Constitution, cl. 2, "This Constitution, and the Laws of the United States, * * * made in Pursuance thereof; * * * shall be the supreme Law of the Land * * *." Id. cl. 3, "* * * all * * * judicial Officers * * * shall be bound by Oath * * * to support this Constitution;

but no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States." And see Amendment I, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof * * *"; and see Reynolds v. United States, supra, 98 U.S. at page 164, quoting from Thomas Jefferson, "* * * religion is a matter which lies solely between man and his God; * * he owes account to none other for his faith or his worship * * *;" and see Davis v. Beason, 1890, 133 U.S. 333, at page 342, 10 S.Ct. 299, 33 L.Ed. 637; Bridges v. State of California, 1941, 314 U.S. 252, at pages 264, 265, 62 S.Ct. 190, 86 L.Ed. 192; West Virginia State Board of Education v. Barnette, 1943, 319 U.S. 624, at pages 638, 640, 641, 63 S.Ct. 1178, 87 L.Ed. 1628; see Id., 319 U.S. at page 642, 63 S.Ct. at page 1187, "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion or other matters of opinion * * *" And see Frankfurter J., 319 U.S. at pages 646, 647, 63 S.Ct. at page 1189, "* * * as judges we are neither Jew nor Gentile, neither Catholic nor Agnostic. We owe equal attachment to the Constitution and are equally bound by our judicial obligations whether we derive our citizenship from the earliest or the latest immigrants to these shores." And see Id., 319 U.S. at pages 652, 653, 63 S.Ct. at pages 1191, 1192; United States v. Ballard, 1944, 322 U.S. 78, at pages 86–87, 64 S.Ct. 882, 88 L.Ed. 1148.[24]

---

23. As to civic duties, see Parker, P. J., in Askounes Liquor License Case, supra, 144 Pa.Super. at page 298, 19 A.2d at page 848; 56 Yale L.Jnl. 605 at 621; Canon 33 A.B.A., Canons of Judicial Ethics.

On occasion the judge is consulted as to qualifications of prospective government employees by the FBI, Civil Service, and the various intelligence agencies of the armed services.

24. And see comment Maxey C. J. in O'Donnell v. Philadelphia Record Co., 1947,

356 Pa. 307, at page 347, 51 A.2d 775, at page 793, "This is the first time the writer ever heard of any attorney injecting into a case the religious affiliations of either a litigant or a witness * * *. So careful is our law to keep religion out of the trial of a case that the act of April 23, 1909, P.L. 140, 28 P.S. § 312, forbids the questioning of any witness in any judicial proceeding, 'concerning his religious belief'. If a witness' religious belief cannot properly be injected into a judicial proceeding, a

For examples of past associations held not sufficient to disqualify, e. g., former judicial colleagues, university professors, law clerks, government service, and in the law, see Disqualification of Judges, John P. Frank, 56 Yale L.Jnl. 605. Such a maneuver as to political relations and affiliations is not novel; it has been tried without success in Benedict v. Seiberling, supra, 17 F.2d at pages 840–841; Fieldcrest Dairies, Inc., v. City of Chicago, supra, 27 F.Supp. 258; Hamlin v. Government of Canal Zone, ex rel. Parker, 5 Cir., 1928, 26 F.2d 161, 162; United States v. Pendergast, supra, 34 F.Supp. 269; Ex parte Hague, 1928, 103 N.J.Eq. 505, 143 A. 836, at page 838; Landrum v. Cockrell, 230 Ky. 599, 20 S.W.2d 464; Ex parte Pope, 26 Ala.App. 282, 158 So. 767, and see Wilkes v. United States, 9 Cir., 1935, 80 F.2d 285, 289.

Based upon the foregoing, defendant asserts his belief that "by reason of the judge's desire to prove his integrity and lack of favoritism" he will be unable to afford the defendant a fair and impartial trial.

For present purposes we assume that Congressman Green did whatever he could, under the circumstances, to help bring about the nominations and confirmations; that his secretary, at his direction, obtained and forwarded two Phrase Books and a Health and Welfare Report concerning the judge's son. But see and cf. Glasser v. United States, 1942, 315 U.S. 60, at page 83, 62 S.Ct. 457, at page 471, 86 L.Ed. 680. "We must guard against the magnification * * * of instances which were of little importance in their setting * * *" Incidents often regarded as trivial and quickly lost sight of when emphasized by counsel often take on an importance they never actually possessed. Goldstein v. United States, 8 Cir., 1933, 63 F.2d 609, 613; United States v. Warren, 2 Cir., 1941, 120 F.2d 211, 212. Suffice it to say, that after due consideration the court concludes that no one instance nor all of them combined constitute grounds for disqualification.

The administration of justice by an impartial judiciary has been basic to our concept of freedom ever since Magna Carta. It is the concern not only of the immediate litigants. Its assurance is every one's concern. In the words of John Adams, "It is essential to the preservation of the rights of every individual, his life, liberty, property, and character, that there be an impartial interpretation of the laws, and administration of justice. It is the right of every citizen to be tried by judges as free, impartial, and independent as the lot of humanity will admit." Art. XXIX of the Declaration of Rights of the Constitution of Massachusetts, 1780; and see Frankfurter J. in Pennekamp v. State of Florida, 1946, 328 U.S. 331, at page 355, 66 S.Ct. 1029, 90 L.Ed. 1295. "A fair trial in a fair tribunal is a basic requirement of due process. Fairness * * * requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness * * * to perform its high function in the best way 'justice must satisfy the appearance of justice.' Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13 [99 L.Ed. 11.]." In re Murchison, 1955, 349 U.S. 133, 136, 75 S.Ct. 623,

litigant's religious belief * * * cannot be * * *." And see Id. and 28 P.S. § 313, as to capacity, competency and credibility. Com. v. Tresca, 1911, 45 Pa. Super. 619; Blair and Hutton v. Seaver, 1856, 26 Pa. 274, 276; McKim v. Philadelphia Transportation Co., 1950, 364 Pa. 237, 72 A.2d 122; Winter v. Winter, 1931, 102 Pa.Super.Ct. 300, 156 A. 603, and see and cf. 35 P.S. § 1664 as to race, color, religion or national orgin; 53 P.S. §§ 3336, 9386, 9387, 61 P.S. § 331.13, 62 P.S. § 2513(f); cf. Aldridge v. United States, 1931, 283 U.S. 308, at pages 314–315, 318, 51 S.Ct. 470, 75 L.Ed. 1054; Dennis v. United States, 1950, 339 U.S. 162, at page 168, 70 S.Ct. 519, 94 L.Ed. 734; and see Commager's "Living Ideas in America" (Harper, 1951) at 520 et seq., and at 527 quoting from the reply of Alfred E. Smith to Charles Marshall in 1927, Id. at 517, "The Social Creed of the Churches"; Par. 15, Federal Council of Churches, 1932, Id. at 517; Jacques Maritain, "Man and the State" at 181.

625, 99 L.Ed. 942, and see Jordan v. Commonwealth of Massachusetts, 1912, 225 U.S. 167, at page 176, 32 S.Ct. 651, 56 L.Ed. 1038.

"To this end no man * * * is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered." In re Murchison, Id., 349 U.S. at page 136, 75 S.Ct. at page 625. Nice questions arise as to the nature of the interest that will disqualify. Tumey v. State of Ohio, 1927, 273 U.S. 510, at page 522, 47 S.Ct. 437, 71 L.Ed. 749. There are differences of degree as to which estimates may differ. Holmes J., Nash v. United States, 1913, 229 U.S. 373, at page 376, 33 S.Ct. 780, 57 L.Ed. 1232; LeRoy Fibre Co. v. Chicago, M. & St. P. Ry. Co., 1914, 232 U.S. 340, at page 354, 34 S.Ct. 415, 58 L.Ed. 631. All such questions do not involve problems of constitutional validity. Tumey v. State of Ohio, supra, 273 U.S. at page 523, 47 S.Ct. at page 441; N. L. R. B. v. Baldwin Locomotive Works, 3 Cir., 1942, 128 F.2d 39, 45. See Tumey v. State of Ohio, supra, 273 U.S. at page 531, 47 S.Ct. at page 444, as to cases where "the interest is so remote, trifling and insignificant that it may fairly be supposed to be incapable of affecting the judgment of or of influencing the conduct of an individual * * * de minimis non curat lex."

Judges are not assumed to be flabby creatures. They may have an underlying philosophy in approaching a case. They are assumed to be men of conscience and intellectual discipline capable of judging a particular controversy fairly on the basis of its own circumstances. United States v. Morgan, 1941, 313 U.S. 409, 421, 61 S.Ct. 999, 85 L.Ed. 1429. "* * * of ordinary firmness of character * * *" Holmes J., Toledo Newspaper Co. v. United States, 1918, 247 U.S. 402, at page 424, 38 S.Ct. 560, at page 565, 62 L.Ed. 1186. They are "* * * supposed to be men of fortitude, able to thrive in a hardy climate." Craig v. Harney, 1947, 331 U.S. 367, at page 376, 67 S.Ct. 1249, at page 1255, 91 L.Ed. 1546; see Fisher v. Pace, 1949, 336 U.S. 155, at page 161, 69 S.Ct. 425, 93 L.Ed. 569. "* * * to impute to judges, a lack of firmness, wisdom, and honor [is a proposition] which we cannot accept as a major premise." Mr. Justice Black in Bridges v. State of California, 1941, 314 U.S. 252, at page 273, 62 S.Ct. 190, at page 199, 86 L.Ed. 192, and see opinion of Frankfurter, J., in Brown v. Allen, 1953, 344 U.S. 443, at page 501, 73 S.Ct. 397, at page 443, 97 L.Ed. 469, "Here as elsewhere in matters of judicial administration we must attribute to them the good sense and sturdiness appropriate for men who wield the power of a federal judge." See Graham v. United States, 1913, 231 U.S. 474, at page 480, 34 S.Ct. 148, 58 L.Ed. 319; Sacher v. United States, 1952, 343 U.S. 1, at page 32, 72 S.Ct. 451, 96 L.Ed. 717.[25]

The theory of our system of justice "* * * is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence * *." Holmes J., Patterson v. State of Colorado ex rel. Attorney General, 1907, 205 U.S. 454, at page 462, 27 S.Ct. 556, at page 558, 51 L.Ed. 879. "No judge fit to be

25. "To practice the requisite detachment and to achieve sufficient objectivity * * demands of judges the habit of self-discipline and self-criticism, incertitude that one's own views are incontestable and alert tolerance toward views not shared * * * these are precisely the presuppositions of our judicial process. * * qualities society has a right to expect from those entrusted with the ultimate judicial power." Rochin v. People of State of California, 1952, 342 U.S. 165, 171, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183. Cf. Frankfurter J. in Craig v. Harney, supra, 331 U.S. at pages 391–392, 67 S.Ct. at pages 1261, 1262; Jackson J. Id. 331 U.S. at pages 395–396, 67 S.Ct. at pages 1263, 1264, and see Frankfurter J. in Pennekamp v. State of Florida, supra, 328 U.S. at pages 357–358, 66 S.Ct. at pages 1042, 1043, and in Bridges v. State of California, supra, 314 U.S. at page 289, 62 S.Ct. at page 206.

one is likely to be influenced consciously except by what he sees and hears in court and by what is judicially appropriate for his deliberations." Frankfurter J. in Pennekamp v. State of Florida, supra, 328 U.S. at page 357, 66 S.Ct. at page 1042.[26]

If conscientious, able and independent men are put on the bench, you cannot predict their course as judges by reference either to partisan motives or to personal or party loyalties. If you could get further down to the bedrock of conviction as to what are conceived to be fundamental principles of government and social relations, you might be able to get closer to accurate prophecy. But you cannot expect to have judges worthy of the office who are without convictions

and the question from that point of view is not as to the qualifications of judges but whether you will have a court of this character and function." Hughes "The Supreme Court of the United States", p. 49 (Col.Univ.Press, 4th Printing 1947), and see Frankfurter J. "Mr. Justice Holmes and the Constitution", 41 Harv.L.Rev. 121.

As to a judge having convictions and "value judgments", see In re J. P. Linahan, Inc., 2 Cir., 1943, 138 F.2d 650, 652; United States v. Valenti, supra, 120 F. Supp. at page 86. "A judge * * * is human, and, like every other man, must have his likes and dislikes, * * *. In so far as he is not swayed by these natural emotions to do any man an injustice, the fact that he has them in

26. "Weak characters ought not to be judges * * *. However, judges are * * * human. and we know * * * how powerful is the pull of the unconscious and how treacherous the rational process * * * jurors are not the only people whose minds can be affected by prejudice * * *." Id., 328 U.S. at pages 357, 358, 66 S.Ct. at page 1042, and see Aero Spark Plug Co., Inc., v. B. G. Corporation, 2 Cir., 1942, 130 F.2d 290, at page 294, footnote 6, and see L. Hand J. in United States v. Dennis, 2 Cir., 1950, 183 F.2d 201, at page 227; United States v. Wood, 1936, 299 U.S. 123, at pages 145, 147, 149, 150, 57 S.Ct. 177, 81 L.Ed. 78; Dennis v. United States, 1950, 339 U.S. 162, at page 172, 70 S.Ct. 519, 94 L.Ed. 734. By way of an attempt to support his claim, defendant cites an opinion of a psychiatrist, based upon an assumed premise, not true in fact; stating a conclusion that does not measure up to the requirements established for medical opinions in Pennsylvania. See Bernstein, "How Certain Must the Expert Be", 18 Pa.Bar Q. 186. As to the status of psychiatry, its advances, shortcomings, and method of making examinations, see Commonwealth v. Patskin, 1953, 372 Pa. 402, at pages 414–417, 93 A.2d 704; Id., 375 Pa. 368, at pages 371, 372, 100 A.2d 472; Commonwealth v. Heller, 1952, 369 Pa. 457, at pages 460–462, 87 A.2d 287; Commonwealth v. Elliott, 1952, 371 Pa. 70, at pages 77–78, 89 A.2d 782; Fisher v. United States, 1946, 328 U.S. 463, at page 476, 66 S.Ct. 1318, 90 L.Ed. 1382, and see Frankfurter J. dissenting, 328 U.S. at pages 477, 484, 66 S.Ct. at pages

1325, 1328; Murphy J. Id., 328 U.S. at page 493, 66 S.Ct. at page 1333; United States ex rel. Smith v. Baldi, 1953, 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549, Frankfurter J. dissenting 344 U.S. at page 570, 73 S.Ct. at page 396. "The nature and operation of the mind are so elusive to the grasp of the understanding that the basis for formulating standards * * * and the means for determining whether those standards are satisfied in a particular case have greatly troubled law and medicine for more than a century. * * * To this day, conflict and controversy regarding these problems bedevil the administration of criminal justice. * * * The deep concern engendered in England just the other day * * * strikingly disclosed the unsatisfactory state of the law." And see Id. 344 U.S. at page 571, 73 S.Ct. at page 396 as to the " * * * fallibilities of human judgment regarding the same body of evidence * * *" N. L. R. B. v. Donnelly Garment Co., supra, 330 U.S. at page 229, 67 S.Ct. at page 761; Stein v. People of State of New York, 1953, 346 U.S. 156, at page 184, 73 S.Ct. 1077, 97 L.Ed. 1522; Leyra v. Denno, 1954, 347 U.S. 556, at page 559, 74 S.Ct. 716, 98 L.Ed. 948, and see Minton J. dissenting, 347 U.S. at pages 587, 589, 74 S.Ct. at pages 732, 733; United States ex rel. Smith v. Baldi, 3 Cir., 1951, 192 F.2d 540, and see Biggs C. J., dissenting at page 565; United States ex rel. Elliott v. Hendricks, 3 Cir., 1954, 213 F.2d 922, at page 931 et seq., and cf. United States v. Hiss, D.C. S.D.N.Y.1950, 88 F.Supp. 559.

common with his brother man does not disqualify him from trying a case." May v. May, 1912, 150 Ky. 522, 150 S.W. 685, 686, and see Wallace v. Jameson, 1897, 179 Pa. 98, at page 114, 36 A. 142.

"He must have neighbors, friends and acquaintances, business and social relations, and be a part of his day and generation. * * * the ordinary results of such associations and the impressions they create in the mind of the judge are not the 'personal bias or prejudice' to which the statute refers. The impressions, whether favorable or unfavorable, of men, which a judge receives, or his convictions about them growing out of his contact or acquaintance with them in the ordinary walks of life, cannot fall within the evil the statute designs to suppress, unless they are so strong that they result in personal bias or prejudice as to individual suitors, dominating the judge to such an extent that they beget a mental or moral condition which makes the judge willing to do wrong although he sees the right, regarding the justiciable matters brought before him, or else, though the judge's intentions be good, render him incapable of rightly seeing the justice of the cause, or impartially enforcing the right involved as between the parties to the suit." Ex Parte N. K. Fairbank Co., supra, 194 F. at pages 989, 990.

"A defendant is easily persuaded of the prejudice of the judge. Adverse rulings convince him of the fact * * *" Craven v. United States, supra, 22 F.2d at page 608; N. L. R. B. v. Donnelly Garment Co., supra, 330 U.S. at page 237, 67 S.Ct. at page 765. Such a

charge quickens the conscience of the judge and makes him more careful in discharging his duties. If there are any personal idiosyncrasies or any tendencies from the normal course of administering justice, frankly to admit such a situation is a part of wisdom. " * * * the sunlight of awareness has an antiseptic effect on prejudices." In re J. P. Linahan, Inc., supra, 138 F.2d at page 653. "A lively appreciation of the danger is the best assurance of escape from its threat * * *" United States v. American Trucking Ass'ns, Inc., 1940, 310 U.S. 534, at page 544, 60 S.Ct. 1059, at page 1064, 84 L.Ed. 1345, and see Cincinnati N. O. & T. P. R. Co. v. Commonwealth of Kentucky (Kentucky Railroad Tax Cases), 1885, 115 U.S. 321, at pages 334–335, 6 S.Ct. 57, 29 L.Ed. 414; and Stone J. dissenting in Morehead v. People of New York ex rel. Tipaldo, 1936, 298 U.S. 587, at page 633, 56 S.Ct. 918, 80 L.Ed. 1347, 103 A.L.R. 1445.[27]

At best defendant's claim is a prophecy (but see Craven v. United States, supra, 22 F.2d at page 607; United States v. Valenti, supra, 120 F.Supp. at page 88; United States v. Parker, supra, 23 F. Supp. at page 883; United States v. Fujimoto, D.C.D.Hawaii 1951, 101 F. Supp. 293, 296) wit_out basis in fact. What was said, supra, as to a ruling in the case applies with even greater force to an anticipated ruling. Allen v. Dupont, supra, 75 F.Supp. at page 549; Curtis v. United States, supra, 91 F. Supp. at page 208.[28]

Defendant attempts to equate the foregoing incidents with the charge in the indictment, which charge, for present

---

27. "One of the subtlest tendencies which a conscientious judge must learn to overcome is that of 'leaning over backwards' in favor of persons against whom his prejudices incline him." In re J. P. Linahan, Inc., supra, 138 F.2d at page 652, Note 10, and see Walker v. United States, 9 Cir., 1940, 116 F.2d 458, at page 461; Cole v. Loew's Inc., supra, 76 F.Supp. at page 881; see and cf. Cooke v. United States, 1925, 267 U.S. 517, at page 539, 45 S.Ct. 390, 69 L.Ed. 767.

28. As to defendant's Ex. B2, see Tucker v. Kerner, 7 Cir., 1950, 186 F.2d 79, at page 84, 23 A.L.R.2d 1027.

In § 8 defendant states the judge *was a* closer friend—apparently in 1945–1946 —of McGlinchey than of the defendant; that the judge is prejudiced in favor of McGlinchey and prejudiced against him; that questions as to credibility and veracity—ordinarily a question for the jury—may arise at the trial. See United States v. Gilbert, D.C.S.D.Ohio 1939, 29

purposes, we must assume to be true, see footnote 13 supra, and states that he will be compelled to call the judge as a witness on his behalf. Aside from the lack of relevance and materiality, see 56 Yale L.Jnl. at 627, and the teachings contra of Borgia v. United States, 9 Cir., 1935, 78 F.2d 550, 554, certiorari denied 296 U.S. 615, 56 S.Ct. 135, 80 L.Ed. 436; Brown v. Bahl, 1934, 111 Pa.Super. 598, at pages 601–602, 170 A. 346; Commonwealth v. Musto, 1944, 348 Pa. 300, at page 304, 35 A.2d 307.

Apart from § 144, 28 U.S.C. § 455 provides, "Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein." June 25, 1948, c. 646, 62 Stat. 908. See Revisers Notes, "substantial interest" was substituted for "concerned in interest". See United States v. Vasilick, 3 Cir., 1947, 160 F.2d 631; Voltmann v. United Fruit Co., 2 Cir., 1945, 147 F.2d 514, 517. As to earlier provisions, see 56 Yale L. Jnl. 605, supra; Spencer v. Lapsley, 1857, 20 How. 264, at page 266, 61 U.S. 264, at page 266, 15 L.Ed. 902, Note 10 A.L.R.2d 1307.[29] There is nothing in

the record or in the mind of the court to support any finding of a substantial interest, or that the judge could be considered a witness, material or otherwise.

It has been estimated that the trial on the present indictment will take about three months. If we had additional judges such a problem would not arise. Judge Follmer has a heavy work load and has scheduled trials involving other military installations in the southern end of the district. While the judge has no desire to try any particular case or to enter upon additional onerous and burdensome duties, the only way the present case can be conveniently disposed of is for the presiding judge to try it, or request that some other judge leave his post of duty and come into the district for three or four months. The consequent overburdening of another judge should not ordinarily be countenanced. See Curtis v. United States, supra, 91 F. Supp. at page 209; Cole v. Loew's Inc., supra, 76 F.Supp. at page 877; United States v. Buck, D.C.W.D.Mo.1938, 23 F. Supp. 503, 505; United States v. Murphy, D.C.W.D.Mo.1937, 19 F.Supp. 987, at page 990; Fieldcrest Dairies, Inc., v. City of Chicago, supra, 27 F.Supp. at page 260; Benedict v. Seiberling, supra, 17 F.2d at page 841; United States v. Valenti, supra, 120 F.Supp. at page 92. As to the law of the case, see TCF Film

---

F.Supp. 507, 509, and Note 18, supra. Not one single instance of their ever having been together anywhere at any time since 1946 is set forth. See Simmons v. United States, 5 Cir., 1937, 89 F.2d 591; Morse v. Lewis, supra, 54 F. 2d at page 1031, and see Johnson v. United States, supra, 35 F.2d at page 357; Fieldcrest Dairies, Inc., v. City of Chicago, supra, 27 F.Supp. at page 260. Note the omission of a charge of "personal" prejudice, a necessary condition. Craven v. United States, supra, 22 F. 2d at page 607; Berger v. United States, supra, 255 U.S. at page 33, 41 S.Ct. at page 233; Henry v. Speer, 5 Cir., 1913, 201 F. 869, at page 872. Incidently, the word bias does not appear in the body of the affidavit; only in the motion. See and cf. Pennsylvania Publications, Inc., v. Pennsylvania Public Utility Commission, supra, 152 Pa.Super.

Ct. at page 297, 32 A.2d at page 48; Berger v. United States, supra, 255 U.S. at page 42, 41 S.Ct. at page 236; N. L. R. B. v. Baldwin Locomotive Works, supra, 128 F.2d at page 52; Craven v. United States, supra, 22 F.2d 605; Eisler v. United States, supra, 170 F.2d at page 283.

29. Defendant relies upon four cases but cf. the factual situations as to each case. The presumption in Frome United Breweries Co. v. Keepers, etc., of Bath, 1926, A.C. 586, 590, and the rule applied in Wiedemann v. Wiedemann, 1949, 228 Minn. 174, 36 N.W.2d 810, has not been adopted in interpreting the federal statute. In McKay v. Superior Court, etc., 1950, 98 Cal.App.2d 770, 220 P.2d 945, 948, and Leonard v. Willcox, 1928, 101 Vt. 195, 142 A. 762, 765, the judge was disqualified by his own statements. As to waiver, see Id., 142 A. at page 765.

Corp. v. Gourley, 3 Cir., 1957, 240 F.2d 711.

The protection of the rights of litigants and their confidence in the integrity of the court is both a delicate and important matter, of which this court is fully aware. The court would have no hesitancy to disqualify itself if any bias or prejudice existed whether or not alleged in any affidavit. On the other hand the court is called upon to perform a duty and should not shirk it. As Mr. Justice Douglas speaking of the judiciary said in "We the Judges" at 445, "Respect and prestige do not grow suddenly; they are the products of time and experience. But they flourish when judges are independent and courageous." In another setting a great writer of our generation, speaking of certain men in the law, observed that they had that touch of hardness about their minds which would not consent to sacrificing principle for the sake of general peace and calm.[30]

Defendant relying upon Berger v. United States, supra, 255 U.S. at page 36, 41 S.Ct. at page 234, and we add Connelly v. United States, Dist. Ct. etc., 9 Cir., 1951, 191 F.2d 692, 693, Note 1, argues that failure of the judge to step aside may result in a writ of mandamus or prohibition, and we add, consequent delay, but see In re Chicago Rapid Transit Co., 7 Cir., 1953, 200 F.2d 341, at page 343, 33 A.L.R.2d 1360, discussing American Steel Barrel Co., supra, 230 U.S. at page 45, 33 S.Ct. 1010, and Skirvin v. Mesta, supra, 141 F.2d at page 671, and

holding that denial of a motion to disqualify is not of itself an appealable order. In accord see Collier v. Picard, 6 Cir., 1956, 237 F.2d 234 and see Korer v. Hoffman, 7 Cir., 1954, 212 F.2d 211, 213, 45 A.L.R.2d 930, "No logical reason appears why the refusal of a judge to disqualify falls into any different category than his refusal to dismiss a complaint for failure to state a cause upon which relief can be granted or to dismiss an indictment for failure to charge a criminal offense insofar as concerns the ability of an aggrieved party to obtain adequate relief upon appeal." See Minnesota & Ontario Paper Co. v. Molyneaux, 8 Cir., 1934, 70 F.2d 545, 547; Cuddy v. Otis, supra, 33 F.2d at page 578; Hurd v. Letts, supra, D.C.Cir., 152 F.2d at page 122. The question was raised but undecided in In re Greene, supra, 160 F.2d at page 518, but see Gulf Research & Development Co. v. Leahy, 3 Cir., 1951, 193 F.2d 302, 303, 304, 305, affirmed by an equally divided court in 344 U.S. 861, 73 S.Ct. 102, 97 L.Ed. 668; see TCF Film Corp. v. Gourley, supra, 240 F.2d at page 714, Note 5, and LaBuy v. Howes Leather Co., 1957, 352 U.S. 249, at pages 254, 255 et seq., 77 S.Ct. 309, at page 313, 1 L.Ed.2d 290, "This is not to say that the conclusion we reach on the facts of this case is intended, or can be used, to authorize the indiscriminate use of prerogative writs as a means of reviewing interlocutory orders." And see Gulf Research & Development Co. v. Harrison, 8 Cir., 1950, 185 F.2d 457, 459, and as to Connelly v. United States, Dist. Ct., supra, 191 F.2d 692, see Gladstein v.

---

30. In all probability defendant as a member of Congress voted for a salary increase and group insurance for the judiciary, but cf. Evans v. Gore, 1920, 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887, 11 A.L.R. 519; Marquette Cement Mfg. Co. v. Federal Trade Commission, supra, 147 F.2d at page 593; 30 Am.Jur. Judges § 55. For the Executive and Legislative branches of the Government—officers and personnel, many of whom have written and are writing great pages in American history—this court has the highest respect, but, when one of its members stands before a court of the United

States, charged with an offense, the court has no alternative but to order the case to proceed to trial. See and cf. Burton v. United States, 1906, 202 U.S. 344, at pages 367–368, 26 S.Ct. 688, 50 L.Ed. 1057; United States v. Quinn, D.C. E.D.N.Y.1954, 111 F.Supp. 870; May v. United States, 1949, 84 U.S.App.D.C. 233, 175 F.2d 994, at page 1004; Williamson v. United States, 1908, 207 U.S. 425, 432, 435, 439, 446, 28 S.Ct. 163, 52 L.Ed. 278, and United States v. Lee, 1882, 106 U.S. 196, 220, 1 S.Ct. 240, 27 L.Ed. 171.

McLaughlin, 9 Cir., 1955, 230 F.2d 762, but see Pope J. at 764.[31]

Based upon the foregoing we find that the affidavit and certificate were not timely or legally sufficient. Absent sufficient reason for disqualification, the affidavit and certificate and, because of statements therein, the brief of defendant's counsel (see Keown v. Hughes, supra, 265 F. at page 575; Green v. Elbert, 1891, 137 U.S. 615, 624, 11 S. Ct. 188, 34 L.Ed. 792; Flegenheimer v. United States, supra, 110 F.2d at page 381) will be stricken from the records of this court.

Defendant's motion will be denied.

---

31. See and cf. Foster v. Medina, supra, 170 F.2d 632; Williams v. Kent, 6 Cir., 1954, 216 F.2d 342; United States v. Murphy, D.C.W.D.Mo.1937, 19 F.Supp. 987, at page 989; United States v. Buck, D.C. W.D.Mo.1938, 23 F.Supp. 503, at page 506, and United States v. Gilbert, supra, 29 F.Supp. at page 509.